324 P.2d 1017

Leslie E. SHANKLE, Petitioner,

v.

T. M. WOODRUFF, Warden of the State Penitentiary of the State of New Mexico, Respondent.

No. 6301.

Supreme Court of New Mexico.

April 30, 1958.

Kellahin & Fox, by Jason W. Kellahin, Santa Fe, for petitioner.

Fred M. Standley, Atty. Gen., Hilton A. Dickson, Jr., and Robert F. Pyatt, Asst. Attys. Gen., for respondent.

SADLER, Justice.

The petitioner herein seeks release by habeas corpus from the state penitentiary where he is serving a life sentence. He was committed to the state penitentiary on May 2, 1952, for the full term of the rest of his natural life beginning with the date mentioned for the crime of obtaining money under false pretenses. The life sentence was imposed by reason of a showing that he was subject to an increased penalty under the habitual criminal act. 1953 Comp. §§ 41–16–3 and 41–16–4.

At the trial it appeared the petitioner on December 9, 1935, was convicted of the crime of swindling in the state of Texas. On July 8, 1938, he was convicted of two charges of swindling in the state of Texas; and on February 3, 1941, petitioner was convicted of making and issuing worthless

checks. As a result of the last conviction at Portales in Roosevelt County, New Mexico, petitioner was sentenced to life imprisonment in the New Mexico state penitentiary under the provisions of 1953 Comp. §§ 41–16–3 and 41–16–4. On December 20, 1949, petitioner received a full and complete pardon from the Governor of New Mexico following a previous release on parole.

Thereafter, on November 13, 1951, in Chaves County, New Mexico, the petitioner was proceeded against by the office of district attorney, the charge being the obtaining of money under false pretenses and with being an habitual criminal under the provisions of the habitual criminal act. He was tried before the Honorable George T. Harris, a judge of the district court for the Fifth Judicial District and upon being found guilty was sentenced to the state penitentiary for the rest of his natural life.

The information upon which petitioner was tried and convicted in the Fifth Judicial District within and for the County of Chaves, State of New Mexico, which resulted in the sentence which petitioner is now serving, is a part of the record in this case. For convenience, so much of the information as is pertinent to the present proceeding, reads as follows:

"The said defendant was, on or about the 3rd day of February, 1941, at Portales, New Mexico, convicted of the crime of making and issuing worthless checks, a felony under the laws of the State of New Mexico.

"The said defendant was, on or about the 8th day of July, 1938, in the State of Texas, convicted of two charges of the crime of swindling, both of which said crimes would be felonious if committed in the State of New Mexico.

"The said defendant was, on or about the 9th day of December, 1935, in the State of Texas, convicted of two charges of the crime of swindling, a crime which would be a felony if committed in the State of New Mexico."

The conviction, as noted, was in Chaves County and commitment thereon was issued in the name of the Honorable George T. Harris, a judge of the Fifth Judicial District, the commitment reading in part, as follows:

"Whereas, at a regular term of the Fifth Judicial District Court of the State of New Mexico, begun and held in and for the County of Chaves on the second Monday of April A.D. 1952, L. E. Shankle was duly convicted of the crime of habitual criminal and by the said court sentenced to imprisonment for the full term of the rest of his natural life beginning with the 2 day of May, A.D. 1952, such imprisonment to be in the New Mexico State Peni-

tentiary, situated at Santa Fe, in the State of New Mexico."

The petitioner seeks his release from the present life sentence being served in this proceeding on habeas corpus. His amended petition for the writ raises the following points:

"1. The commitment under which petitioner is held in the New Mexico State Penitentiary is void on its face.

"2. The Court was without jurisdiction to issue the commitment under which petitioner is presently being held.

"3. Petitioner had received a full and complete pardon and therefore could not be sentenced as a habitual criminal on the basis of the pardon offense.

"4. Petitioner had previously been sentenced to a life term on the basis of the same offenses under which he is presently being held as a habitual criminal and said offenses could not again be considered as the basis for a second life term under the habitual criminal statute.

"5. The information filed as to that portion which purports to charge petitioner with being a habitual criminal fails to charge that petitioner had previously been convicted of a felony under the laws of the State of New Mexico."

The respondent, Superintendent of the state penitentiary, designated Warden herein, answers petitioner's first point under a heading stating the converse thereof, to-wit:

"Legality of Petitioner's imprisonment does not depend on the mittimus."

His first authority cited is from 15 Am. Jur. 153, § 502, and we quote as follows:

"It has been generally held that a defendant imprisoned, in the custody of a proper officer, under a conviction by a court of general jurisdiction, will not be released on habeas corpus, merely because of a defective commitment in the hands of such officer, when the judgment of conviction authorizes such imprisonment. This view is rested on the theory that when a valid final judgment of imprisonment is rendered against a defendant, that judgment becomes the real authority for such imprisonment, and the commitment, which ordinarily is merely a certified copy of the judgment, is only evidence of such authority."

The controlling authority, however, is Ex parte DeVore, 18 N.M. 246, 136 P. 47, 51, reading:

"It is true the mittimus delivered to the warden of the penitentiary recites that petitioner was convicted of the crime of 'escape from jail,' but the

legality of the imprisonment does not rest upon the mittimus, but upon the judgment, (Sennott's Case, 146 Mass. 489, 16 N.E. 448) and a prisoner who has been legally and properly sentenced to prison can not obtain his discharge simply because there is an imperfection, or error, in the mittimus. People ex rel. Trainor v. Baker, 89 N. Y. [460], 461."

Looking at the record, we find the information filed charges petitioner with obtaining money under false pretenses, contrary to section 40–21–3 " * * * and of being an habitual criminal, contrary to section 41–16–3 * * *." He was tried under this information, and the jury duly returned a verdict of guilty as charged. Thereupon, the district court announced its judgment and sentence, and imposed the life sentence mandatorily required by 1953 Comp. §§ 41–16–3 and 41–16–4. This valid judgment is not to be nullified by the flaws complained of in the commitment.

The petitioner next challenges jurisdiction of the district court to impose the judgment and sentence it did, passing up any argument on the point by saying validity of the proceedings leading up to the judgment and sentence will be discussed under other points urged. It is pertinent to remark, however, that in view of 1953 Comp. § 40–21–3, penalizing as a felony the obtaining of money under false pretenses, of which petitioner stands convicted, and of 1953 Comp. §§ 41–16–3 and 41–16–4, enhancing the penalty on one thrice convicted of a felony, there would seem to be no doubt of jurisdiction of the district court to impose the sentence it did, even in the face of the objections urged.

The petitioner's counsel next advances what constitutes the most serious challenge to the validity of his sentence. It is that having received a full and complete pardon of his sentence to life imprisonment as an habitual criminal, by reason of his previous convictions, such convictions became so to speak "functus officio" and, neither they nor any of them could be again employed to support a sentence to life imprisonment under the habitual criminal act. Counsel for petitioner admits there is a distinct split of authority on the proposition and it becomes our province to say which line of authorities is based upon the better reason and logic constituting, as it does, the weight of authority.

While recognizing the division of authority on the question, the decided weight of authority rests with the respondent in his claim that an executive pardon of the offense which provokes the court into imposing a life sentence under the habitual criminal act is unavailing to deny the court authority to employ the same felony convictions again for purpose of imposing a

sentence under the habitual criminal act, if subsequent to his pardon, the prisoner commits another felony.

Taking note of this division of authority the author of the text on the subject in 25 Am.Jur. 269, § 21, under topic "Habitual Criminals" has this to say:

"Effect of Pardon.—The extravagant language sometimes used in describing the effect of a pardon is in contrast with the actual decisions of the courts. A literal interpretation of this language is a basis of the conflict of the authorities as to the effect of a pardon on the liability of the defendant to suffer the enhanced penalty for a subsequent conviction. The prevailing view, that a pardon for a prior offense does not prevent the imposition of an increased penalty for a subsequent offense, is based upon the theory that pardon does not touch the person's actual guilt and that the enhanced punishment is not an element of the first offense or an additional disability attaching thereto, but is an appropriate penalty for one who, despite a prior conviction, relapses into crime. A contrary view, based on the reasoning that a pardon 'maketh a new man' and obliterates guilt and offense, holds that a pardon prevents the prior conviction from being used in determining the punishment for a subsequent offense."

There are so many cases supporting the proposition that a pardon by the Chief Executive is unavailing to deny use of the habitual act upon commission of a subsequent felony, that it will suffice to cite only a few of them. See, People v. Biggs, 9 Cal.2d 508, 71 P.2d 214, 116 A.L.R. 205; People v. Dutton, 9 Cal.2d 505, 71 P.2d 218, appeal dismissed Dutton v. People of State of California, 302 U.S. 656, 58 S.Ct. 365, 82 L.Ed 508; Jones v. State, 141 Tex. Crim.R. 70, 147 S.W.2d 508, overruling Scrivnor v. State, 113 Tex.Crim.R. 194, 20 S.W.2d 416, holding contra; Newton v. State, 56 Okl.Crim. 391, 40 P.2d 688, indicating disapproval of Tucker v. State, 14 Okl.Crim. 54, 167 P. 637, holding contra; State v. Edelstein, 146 Wash. 221, 262 P. 622; Dean v. Skeen, 137 W.Va. 105, 70 S.E.2d 256, 31 A.L.R.2d 1180; People ex rel. Prisament v. Brophy, 287 N.Y. 132, 38 N.E.2d 468, 139 A.L.R. 667, certiorari denied 317 U.S. 625, 63 S.Ct. 62, 87 L.Ed. 506; Carlesi v. People of State of New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843. See, also, exhaustive annotations of the subject in 58 A.L.R. 49; 82 A.L.R. 362; 116 A.L.R. 683; and 31 A.L.R.2d 1186, where the authorities pro and con are listed and discussed.

We call special attention to the excellent analysis of the authorities and the rationale of the decisions supporting the conclusion we have reached touching it, as found in the cases of People v. Biggs from

California and People ex rel. Prisament v. Brophy from New York, both cited, supra [9 Cal.2d 508, 71 P.2d 215]. In the Biggs case, the court observed:

"It is immaterial that the statutes do not expressly refer to persons pardoned after conviction, since by failure to exclude them, they are obviously included within the general provisions."

After a somewhat critical discussion about pardons making new men of convicts, the court went on to say:

"But the somewhat extravagant language occasionally employed must be contrasted with the actual decisions of the courts. It is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and generally speaking, it also removes any disqualifications or disabilities which would ordinarily have followed from the conviction. To say, however, that the offender is 'a new man,' and 'as innocent as if he had never committed the offense,' is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it place no restraints upon him following his conviction. The criminal character or habits of the individual, the chief postulate of habitual criminal statutes, is often as clearly disclosed by a pardoned conviction as by one never condoned. The broad generalizations quoted above are, if taken too literally, logically unsound as well as historically questionable. See Williston, Does a Pardon Blot Out Guilt? 28 Harv.L.Rev. 647; People v. Carlesi, 154 App.Div. 481, 139 N.Y. S. 309; 13 Columb.L.Rev. 418; In re Lavine, 2 Cal.2d 324, 41 P.2d 161, 42 P.2d 311; 4 Cal.L.Rev. 236."

and concluded at pages 217–218 of 71 P.2d, by holding:

"After a full consideration of the expressions of the courts, both in this and other jurisdictions, we are satisfied that the contention of appellant cannot be sustained. We are unable to see how the pardon, relieving the offender from the effects or disabilities of his first crime, can in addition prevent the normal application of the statute punishing him for a subsequent offense. In its provisions for increased punishment for prior offenders, the Legislature could doubtless make an exception in favor of persons pardoned, if it had reason to believe that such persons,

though found guilty of a subsequent offense, were no more dangerous to society, because no more criminal in character, than persons first convicted. It has not seen fit to do so, and unless it does, this court cannot usurp the legislative function of determining the appropriate punishment for offenders coming within the statutory classifications."

The annotation on the subject on the effect of a pardon to be found in 139 A.L.R. 683 is introduced by this language, to-wit:

"The later cases have given support to the generally prevailing rule, as stated in the prior annotations, to the effect that a pardon is immaterial and that a defendant may be adjudged a prior offender and given increased punishment as such, regardless of the fact that the prior offense was pardoned."

Again, in 31 A.L.R.2d 1186, the author of the annotation, as in every earlier one, makes the same appraisal of the authorities. He states:

"There is a conflict of authority on the effect of the pardon of a prior conviction on the application of the habitual criminal act. The majority view is that the pardon of a conviction does not preclude such conviction from being considered as a prior offense under a statute increasing the punishment for a subsequent offense."

We reach the same conclusion as do the courts in cases cited, supra. We must rule against petitioner on this point.

Finally, the petitioner complains that the information fails to charge prior felonies. Actually, the information filed, after charging petitioner with the crime of obtaining money under false pretenses, contrary to 1941 Comp. § 41–2103 (1953 Comp. § 40–21–3), as a basis for imposition of the sentence called for by the habitual criminal act, specifically 1953 Comp. § 41–16–3, did charge petitioner with having been convicted, not three times as required by the statute, but with the commission of four separate felonies, including that for which he had been pardoned, the conviction in Roosevelt County, New Mexico.

As the attorney general so aptly states the controlling statute makes no requirement that prior convictions be pleaded in the information itself, as was done in this case. The court instructed the jury that the petitioner herein as a defendant in the case in which he now stands convicted before this Court, touching prior convictions, as follows:

"You are instructed that the defendant has made a judicial admission of his prior convictions as alleged in numerical paragraphs Nos. 2, 3 and 4 of the Information, and as to those paragraphs charging him with being a habitual criminal you will give no further consideration as such para-

graphs were added to the Information only for the purpose of fixing the penalty in the event you find him guilty of the charges contained (in) numerical paragraph No. 1 of the Information."

We have heretofore spoken on the question of imposition of the penalties called for by the habitual criminal act, where allegations of prior convictions in the felony charge were sought to be made the basis of a claim of fundamental error on an appeal. See, State v. Johnson, 57 N.M. 716, 263 P.2d 282, 284. Speaking through Mr. Justice Compton, we said:

"We will first dispose of the appeal as it concerns appellant, Arthur Fay Johnson. For a reversal, he relies on fundamental error. The information charged the appellants with the murder of William Cabrel. It also contains separate allegations that the appellant, Arthur Fay Johnson, had theretofore been convicted of six separate felonies, listing them. The inclusion of allegations of prior convictions and their admission in evidence, though without objections, is the basis of his claim of fundamental error. We are mindful of the provisions of § 42–625, 1941 Comp., providing that prior convictions shall not be alleged unless such allegation is necessary to charge the offense under § 42–607 of the Statute. Nevertheless, the purpose of the rule is the protection of an accused, and its violation cannot be sustained as error in the absence of a showing of injury or prejudice. The record in this regard is clear. In chambers and before the trial began, appellant and his attorney announced that they wished to enter a plea of guilty to the charge of prior convictions. The plea was accepted in the absence of the jury and then only after the court had admonished appellant that he was entitled to a hearing before a jury as to the truth of any one or all of the allegations. The state submitted its case to the jury on the charge of murder only. At no time before the state rested was reference made to prior convictions, nor did appellant at any time object to the inclusion of the allegations of prior convictions. Obviously, thus far appellant was not injured or prejudiced in any manner.

"The appellant took the stand in his own behalf and it is from his lips the jury first heard his own amazing criminal record, possibly unparalleled, of which he now complains. Beginning in 1919 and ending with his conviction in 1936, he committed all told fourteen felonies, served prison terms therefor in eight instances, six running concurrently. Not only did he voluntarily relate the six felonies alleged in the information but an additional eight. After appellant related the facts lead-

ing up to his conviction on each of the fourteen felony charges, the court admitted in evidence authenticated judgments of the prior convictions as alleged. The doctrine of fundamental error has no place in the case."

It would seem somewhat incongruous to release one on *habeas corpus* by reason of pleading in the information prior convictions sufficient to invoke the habitual criminal act, and declining to sustain it on a claim of fundamental error on a *direct appeal* by one under sentence of death as in State v. Johnson, supra.

We agree with the attorney general that the grounds of petitioner's objection to the information, if valid and the error reserved below, might have been made the basis of a timely appeal but not grounds for release on habeas corpus. Incidentally, speaking of appeals, the record discloses that such an appeal was taken, but subsequently was dismissed by the district attorney at the written request of petitioner herein.

We find no basis for ordering the discharge of the petitioner. Accordingly, his petition will be dismissed and he is remanded to the custody of the respondent.

It will be so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SHILLINGLAW, J., did not participate.