759 P.2d 1003

STATE of New Mexico,
Plaintiff–Appellee,

v.

Pete MONDRAGON,
Defendant–Appellant.

No. 10456.

Court of Appeals of New Mexico.

March 24, 1988.

Certiorari Denied May 31, 1988.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Fred Chris Smith and Richard Klein, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

This case involves the power of the governor to issue pardons. We reverse the

trial court's implicit ruling that the governor lacked power to pardon habitual offender sentences not yet imposed on convictions in existence at the time the governor issued the pardon.

Defendant was convicted of fourteen offenses and the state filed habitual offender proceedings. Defendant was sentenced on the fourteen underlying offenses and he appealed. During the pendency of the appeal, the governor issued a pardon, pardoning twelve of the offenses and stating that the pardon applied to any sentence imposed or habitual sentence to be imposed on the pardoned offenses. Upon affirmance of the remaining convictions (defendant had abandoned his appeal on the pardoned counts), the trial court sentenced defendant as an habitual offender. Having one previous conviction, defendant was sentenced to one year on each of the fourteen original counts as an habitual offender, those sentences to run consecutively to each other.

Defendant appeals, challenging the trial court's power to sentence him as an habitual offender for the counts pardoned by the governor in which pardon the governor specifically commuted the enhanced sentence. Our calendar notice proposed summary reversal. The state filed a memorandum in opposition. Not persuaded by the memorandum, we reverse.

The state makes three arguments why the governor lacked power to issue the pardon he did, contending that: (1) the governor has no power to pardon habitual sentences; (2) the governor has no power to pardon the status as a habitual offender; and (3) the pardon issued to defendant was premature. We reject each of these contentions.

1. *Power to Pardon Habitual Sentences*

■ The power to pardon is not an inherent power of the governor but, rather, rests solely in a grant by the people. *Ex parte Bustillos*, 26 N.M. 449, 194 P. 886 (1920). The people of this state have granted the governor the power to pardon. Article V, Section 6 of the New Mexico Constitution states:

Subject to such regulations as may be prescribed by law, the governor shall have power to grant reprieves and pardons, after conviction for all offenses except treason and in cases of impeachment.

While there may be regulations on the manner of the exercise of the power, the ultimate right to pardon is unrestrained by any consideration other than the conscience, wisdom, and sense of public duty of the governor. Under this language, the power granted by the people is broad. *Ex parte Bustillos*.

■ In support of its contention that the governor has no power to pardon habitual sentences, the state argues that the habitual offender statutes are regulations prescribed by law mandating punishment even upon pardoned offenses. Most of the state's argument in this regard has been answered in the calendar notice to which it did not specifically respond. Thus, we liberally incorporate the reasoning of our calendar notice herein.

If the power to pardon is to be regulated by law, we believe the legislature should expressly clarify its intent to regulate the power. The habitual offender statutes, being highly penal in nature, are to be strictly construed. *State v. Lujan*, 76 N.M. 111, 412 P.2d 405 (1966). Because it says nothing about pardons, our calendar notice proposed not to construe the habitual offender statutes as limiting the power of the governor to pardon. We said we would not do this any more than we would consider any other prescription of sentence, of which the statutes contain many, as a limit on the governor's power.

Cases setting forth the mandatory nature of the habitual offender statutes, *e.g.*, *State v. Davis*, 104 N.M. 229, 719 P.2d 807 (1986), are not persuasive for the proposition that the governor could not pardon the sentence enhancement on the several convictions he pardoned in this case. Citing *State v. Harris*, 101 N.M. 12, 677 P.2d 625 (Ct.App.1984), the state conceded below that the sentence enhancements at issue here could run concurrently or consecutively in the trial court's discretion. Thus,

when defendant, having had a prior conviction, was convicted in the present case, the habitual offender statutes only mandated that he actually serve one year. The governor's pardon did not affect that one year. For these reasons, we proposed to rule that the "[s]ubject to such regulations as may be prescribed by law" language does not affect the governor's power to do what he did in this case.

■ The state also contends that the habitual sentences pardoned are not offenses and are, therefore, not within the grant of the pardon power. Our calendar notice answered this contention as follows. Notwithstanding that the power to pardon has been defined in terms of offenses under both the federal and New Mexico Constitutions, the power has always been held to apply to sentences, portions thereof, and even where they shall be served. *Biddle v. Perovich*, 274 U.S. 480, 47 S.Ct. 664, 71 L.Ed. 1161 (1927); *Ex parte Wells*, 59 U.S. (18 How.) 307, 15 L.Ed. 421 (1855); AG Op. No. 1175 (1914). *But see* AG Op. No. 68–57 (1968).

■ Apart from repeating its contention that the governor has no power to commute enhanced sentences for habitual offenders and stating that the issue need not be reached in this case, the state does not respond to the calendar notice's proposal on the issue of the governor's general power to commute habitual offender sentences. A party responding to a summary calendar notice must come forward and specifically point out errors of law and fact. *State v. Sisneros*, 98 N.M. 201, 647 P.2d 403 (1982). Because the state has not convinced us that our proposal regarding the governor's general power is erroneous, we hold, in accordance with our proposal and for the reasons given above, that the governor does have the power to commute enhanced sentences.

2. *Power to Pardon Status as an Habitual Offender*

■ For its second contention, the state maintains that the constitutionally defined power to pardon "offenses" does not include the power to pardon a defendant's status as an habitual offender. We agree, and our calendar notice did not propose to

hold otherwise. We did not and do not depart from the pronouncements of our supreme court in *Shankle v. Woodruff*, 64 N.M. 88, 324 P.2d 1017 (1958). *Shankle* does not, however, apply to this case. *Shankle* involved a pardon on the previous conviction, i.e., the conviction that was being used to enhance the sentence on the current conviction. *Shankle* held that a pardon does not obliterate the underlying conviction for the pardoned offense. Thus, the pardoned offense could be considered a prior offense for purposes of sentence enhancement for a subsequent conviction.

This case does not involve pardons on previous convictions. It involves a pardon on current convictions and elimination or reduction of the sentence on the current conviction. If defendant commits future crimes, the pardoned offenses may be used to enhance future sentences. *Shankle v. Woodruff*. But *Shankle* does not mean that the governor may not commute or pardon current habitual sentences.

■ It is well established that, by exercise of the power to pardon, the governor can exempt an individual from the punishment that the law imposes as a result of conviction for commission of a crime. *Shankle v. Woodruff*. A sentence enhancement, though imposed on the basis of a defendant's status as an habitual offender, is nonetheless punishment for commission of the crime to which the enhanced sentence attaches. *State v. Gonzales*, 84 N.M. 275, 502 P.2d 300 (Ct.App.1972). Thus, the power to pardon an individual from punishment for commission of a crime includes the power to preclude any punishment that might be imposed, upon conviction of that crime, as a result of an individual's status as an habitual offender.

The state also argues that since the governor's pardon did not remove the convictions, defendant could be required to serve an enhanced sentence based upon those convictions. Thus, under *State v. Davis*, which held that a court could enhance a deferred sentence because it was the conviction and not the sentence upon which the habitual status attached, the state urges that the trial court should be permitted to consider the convictions for which he was pardoned in sentencing defendant under

the habitual offender statutes. While we could agree with the state and allow the trial court to sentence defendant, we cannot agree that the sentences could be enforced.

If the governor had simply pardoned the offenses here without also stating the intent to affect the sentence enhancement based thereon, we would need to reach the state's contention that the enhanced portion of the sentences would have to be served. But the governor did not issue a simple pardon of offenses; he pardoned the offenses, any sentence imposed, and any sentence enhancement based thereon. As discussed above, the governor has the power to pardon or commute habitual sentences. Thus, defendant cannot be required to serve any sentence enhancement imposed upon the pardoned offenses, thereby rendering any sentencing proceeding in this regard an empty gesture.

### 3. *Prematurity of the Pardon*

■ The state's final contention is that the pardon is premature because defendant had not been determined to be an habitual offender at the time the governor issued the pardons. The state notes that our Constitution limits pardons to the time after conviction. The state points out that this limitation is an attempt to avoid the abuses existent at common law or under the federal Constitution. *See In re Anderson*, 34 Cal.App.2d 48, 92 P.2d 1020 (1939); Boudin, *The Presidential Pardons of James R. Hoffa and Richard M. Nixon: Have the Limitations on the Pardon Power Been Exceeded?*, 48 U.Colo.L.Rev. 1 (1976); Duker, *The President's Power to Pardon: A Constitutional History*, 18 Wm. & Mary L.Rev. 475 (1977). Thus, the state argues, without citation to more specific authority, that the limitation "after conviction" in our Constitution is consistent with the Separation of Powers Doctrine because it allows the executive to exercise clemency only after the other branches of government have completed their roles in investigating, prosecuting, and judging crimes.

We disagree that the term "after conviction" must necessarily be read as permitting such broad proscription. In *In re Anderson*, defendant was granted a par-

don after conviction and before sentencing. This was permitted because "conviction" was given its ordinary meaning. In Attorney General Opinion No. 2089 at 161 (1918), our attorney general opined that the pardoning power may be exercised during appeal, thus allowing its exercise before the judiciary is finally through with the case.

Giving conviction its ordinary meaning, as in *Anderson*, we find that New Mexico defines conviction as the finding of guilt, even before formal adjudication by the court, much less before sentencing. *State v. Castillo*, 105 N.M. 623, 735 P.2d 540 (Ct.App.1987). Once convicted of the underlying offense, habitual offender proceedings do not involve further "convictions." They involve "determinations" and "findings" by the trial court and sentencing thereon. NMSA 1978, §§ 31–18–17 to –20 (Repl.Pamp.1987).

Defendant was convicted at the time the jury found him guilty of the fourteen offenses. The governor here acted after conviction. There was no violation of the constitutional limitation.

The state requests a general calendar to allow us to decide this case thoroughly with value as precedent. We can do so on a summary calendar. *Garrison v. Safeway Stores*, 102 N.M. 179, 692 P.2d 1328 (Ct.App.1984).

■ We note that a legal calendar may be warranted if the issues truly require extensive briefing. *Id.* However, we believe the application of legal principles to this case is clear and that extensive briefing would only cause undue delay. Under these circumstances, summary disposition is appropriate. *See id.*

The sentence imposed is reversed and remanded with directions to vacate the sentence and enter a new sentence limited to counts 5 and 20.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.