513 S.E.2d 112

**STATE of South Carolina, Respondent,**

v.

**Kenneth R. BAUCOM, Appellant.**

**No. 2946.**

Court of Appeals of South Carolina.

Heard Jan. 12, 1999.

Decided Feb. 16, 1999.

Rehearing Denied March 27, 1999.

---

372

Stephen D. Schusterman, of Rock Hill, for Appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor Thomas E. Pope, of York, for Respondent.

ANDERSON, Judge:

Kenneth R. Baucom appeals from his conviction for driving under the Influence (DUI), second offense. We affirm.

### FACTS/PROCEDURAL BACKGROUND

On May 18, 1993, Baucom received a Certificate of Pardon for several convictions, Including a 1990 DUI conviction. Baucom was again arrested for DUI on August 24, 1996. His indictment provided: "That Kenneth Reid Baucom did in York County on or about August 24, 1996, drive a vehicle while under the influence of intoxicating liquors, ... such not being the first offense within a period of ten years." Baucom was convicted of DUI, second offense. The trial judge relied on Baucom's pardoned 1990 DUI conviction to enhance the punishment for the current DUI conviction.

### ISSUE

Does the pardon of a conviction preclude such conviction from being considered as a "prior offense" under a statute enhancing the punishment for a subsequent conviction?

### LAW/ANALYSIS

### I. EFFICACY OF PARDON

■ Baucom argues the trial court erred in ruling the pardon of his 1990 DUI conviction did not preclude that conviction from being considered as a prior conviction under S.C.Code Ann. § 56-5-2940 (1991 & Supp.1998), which enhances the punishment for a subsequent DUI. He contends the "pardon fully releases him from all legal consequences of his crimes and convictions, both direct and collateral, including

the punishment or whatever else the law has provided." We disagree.

## A. Majority Rule

The issue of whether a pardoned conviction is available to enhance punishment for a subsequent conviction is novel in South Carolina. The majority view is the pardon of a conviction does not preclude such conviction from being considered as a prior offense under a statute enhancing the punishment for a subsequent conviction. G. Van Ingen, Annotation, *Pardon as Affecting Consideration of Earlier Conviction in Applying Habitual Criminal Statute,* 31 A.L.R .2d 1186 (1953 & Supp.1995); 39 Am.Jur.2d *Habitual Criminals* § 13 (1968). *See also Carlesi v. New York,* 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914) (for purposes of habitual offender sentencing, state may use federal conviction pardoned by president); *State v. Robinson,* 251 A.2d 552, 556 (Del.1969) ("It is the generally prevailing rule that the pardon of a conviction does not preclude the conviction from being considered as a prior offense under a statute increasing the punishment for a subsequent offense."); *State v. Zumalt,* 202 Kan. 595, 451 P.2d 253, 256 (1969) ("Our rule is that the record of a prior felony conviction may be used to increase the sentence imposed for a subsequent felony conviction in accord with the habitual criminal act despite the fact the prisoner received a pardon as to the prior conviction."); *State v. Stern,* 210 Minn. 107, 297 N.W. 321 (1941) (pardon granted defendant for previous conviction in California was not bar to imposition of enhanced punishment under Minnesota's habitual criminal statute following conviction of crime of performing illegal operation); *Shankle v. Woodruff,* 64 N.M. 88, 324 P.2d 1017 (1958) (holding pardon does not prevent use of prior conviction for habitual offender sentencing); *State v. Webb,* 36 N.D. 235, 162 N.W. 358 (1917) (fact that accused was pardoned for prior conviction does not exempt him from increased punishment on subsequent conviction); *Kellogg v. State,* 504 P.2d 440 (Okla.Crim.App.1972) (conviction is not wiped out by pardon, as pardon by executive power does not blot out solemn act of judicial branch of government; pardoned felony conviction may be used to increase punishment on subsequent conviction under habitual criminal statute); *Commonwealth v. Smith,* 324 Pa. 73, 187 A.

387 (1936) (accused who pleaded guilty to murder in second degree and who had previously been sentenced for manslaughter and had obtained complete pardon held properly sentenced as second offender, since punishment inflicted for second offense was solely for second offense and not for offense for which accused was pardoned); *Jones v. State*, 141 Tex.Crim. 70, 147 S.W.2d 508 (App.1941) (prior conviction could be invoked as basis for added penalty for subsequent offenses imposed by statute, notwithstanding that Governor had granted defendant a full pardon after defendant had served part of his term in penitentiary following his prior conviction; governor can forgive penalty but has no power to direct that the courts shall forget either the crime or the conviction); *State v. Edelstein*, 146 Wash. 221, 262 P. 622 (1927) (holding prior conviction, though pardoned, is to be counted in determining sentence under multiple offender laws); *Dean v. Skeen*, 137 W.Va. 105, 70 S.E.2d 256 (1952) (fact that accused was pardoned for prior offense does not exempt him from increased punishment provided for in habitual criminal statute upon a subsequent conviction).

This view is based on the principle that a pardon does not affect the recipient's guilt with respect to the offense for which he was imprisoned, and that the enhanced punishment authorized by statute is an element not of the earlier offense but of the subsequent crime. 39 Am.Jur.2d *Habitual Criminals* § 13 (1968). A vintage analysis of the issue in *Herndon v. Commonwealth*, 105 Ky. 197, 48 S.W. 989 (1899), is edifying:

> "The pardon relieved the convict of the entire penalty incurred by the offense pardoned, and nothing less or more. It neither did nor could relieve from any penal consequence resulting from a different offense, committed after the pardon, and never pardoned. The increased punishment prescribed by the statute for the subsequent offense was no part of the penal consequences of the first offense, but applied exclusively to the last, as aggravated by its repetition of the same crime.... In any aspect, the augmented punishment is for the last, and not at all for the first, offense."

*Herndon*, 48 S.W. at 990.

In *People v. Biggs*, 9 Cal.2d 508, 71 P.2d 214 (1937), cited or quoted by a plethora of other jurisdictions, the court expounds:

In brief, the question is whether a conviction may, after pardon of the offender, be deemed a prior conviction within the meaning of our statutes prescribing increased punishment for habitual criminals or those previously convicted of crime. We are of the opinion that it may.

Our statutes, like most of the acts in other states, are silent on this point. They refer simply to prior "convictions" or to persons previously "convicted," making no other qualification or explanation save that the defendant must have served a term of imprisonment therefor. This fact would in itself appear to be an answer to appellant's contention, for if he has suffered prior convictions, he comes within the classification of persons who are to be subjected to heavier punishment for subsequent offenses, and must be so punished. It is immaterial that the statutes do not expressly refer to persons pardoned after conviction, since by failure to exclude them, they are obviously included within the general provisions. This is a necessary conclusion from the language of the statutes, and it is determinative of the present case unless there is something in the nature of a pardon which compels a different interpretation. It should be borne in mind, in this connection, that the question is solely one of the legislative intent; the constitutional power of the Legislature to impose a heavier penalty for the subsequent conviction, despite a prior pardon, is settled.

. . . .

... It is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and generally speaking, it also removes any disqualifications or disabilities which would ordinarily have followed from the conviction. To say, however, that the offender is "a new man," and "as innocent as if he had never committed the offense," is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it place no restraints upon him following his conviction. The criminal character or habits of the individual, the chief postulate of habitual criminal statutes, is often as clearly

disclosed by a pardoned conviction as by one never condoned....

. . . .

... We are unable to see how the pardon, relieving the offender from the effects or disabilities of his first crime, can in addition prevent the normal application of the statute punishing him for a subsequent offense.

*Biggs*, 71 P.2d at 215–17 (citations omitted).

The rationale behind a pardon is discussed in *Wilborn v. Saunders*, 170 Va. 153, 195 S.E. 723 (1938):

A pardon is granted on the theory that the convict has seen the error of his ways, that society will gain nothing by his further confinement, and that he will conduct himself in the future as an upright, law-abiding citizen. However, it is fitting, under some circumstances, that certain conditions insuring good conduct should be required of the convict for this opportunity to escape the service of the full penalty prescribed for his former crimes. A future violation of the penal law, whether such takes place during the period that the pardoned convict was originally sentenced or thereafter, demonstrates that the time actually served by the convict was not enough to impress upon him the error of his old course of conduct, and that the pardon should never have been granted.

*Wilborn*, 195 S.E. at 727.

Since the very essence of a pardon is forgiveness or remission of penalty, assessed on the basis of the conviction of the offender, a pardon implies guilt. 67A C.J.S. *Pardon & Parole* § 18 (1978). It does not obliterate the fact of the commission of the crime and the conviction thereof, nor does it "wash out the moral stain." *Id.* Thus, a pardon involves forgiveness and not forgetfulness. *Id.* The "ambit of the pardons statute must be confined to a restoration of civil rights; it cannot have the effect of eliminating consideration of a prior conviction in a subsequent judicial proceeding." *State v. Cobb*, 403 N.W.2d 329, 330 (Minn.Ct.App.1987).

## B. Minority Rule

A minority of jurisdictions hold a pardoned conviction cannot be used as a basis for Increasing the punishment of a

subsequent conviction. G. Van Ingen, Annotation, *Pardon as Affecting Consideration of Earlier Conviction in Applying Habitual Criminal Statute*, 31 A.L.R.2d 1186 (1953 at Supp. 1995); 39 Am.Jur.2d *Habitual Criminals* § 13 (1968). *See also Duncan v. State*, 254 Ark. 449, 494 S.W.2d 127 (1973) (error to use conviction from which defendant had obtained pardon from Governor to enhance defendant's sentence in habitual criminal proceedings); *Fields v. State*, 85 So.2d 609 (Fla.1956) (felony conviction for which offender has received full and unconditional pardon cannot be counted as prior felony conviction under provisions of habitual offender law); *Randall v. State*, 73 Ga.App. 354, 36 S.E.2d 450 (1945) (holding effect of full pardon is to obliterate every stain which law attached to offender, to place him where he stood before he committed pardoned offense, and to free him from penalties and forfeitures to which the law had subjected his person and property); *Kelley v. State*, 204 Ind. 612, 185 N.E. 453 (1933) (failure of legislature to expressly include pardoned conviction in its habitual criminal act must be construed as evidencing its intention that such convictions should not be counted); *State v. Childers*, 197 La. 715, 2 So.2d 189 (1941) (full complete pardon by governor precludes use of pardoned conviction as basis for enhanced punishment following subsequent conviction); *State v. Clifton*, 125 N.C.App. 471, 481 S.E.2d 393 (1997) (holding pardoned prior conviction may not be considered as aggravating factor during sentencing absent revocation of pardon by governor); *State v. Martin*, 59 Ohio St. 212, 52 N.E. 188 (1898) (former conviction of felony on account of which governor has granted unconditional pardon may not be regarded as one of prior convictions necessary to place accused in category of habitual criminals subject to increased punishment, since such pardon has effect of obliterating the offense).

It is noteworthy that several of these jurisdictions based their decisions to so boldly empower pardons on their interpretation of their own state's statutory or constitutional law. *See Duncan, supra* (court based its decision, in part, on change in statutory law); *Fields*, 85 So.2d at 611 (interpreting the state's habitual offender law by opining "inasmuch as the Legislature did not expressly include pardoned convictions in the Act, it is taken as evidencing an Intention on the part of

the Legislature of this State that pardoned convictions not be counted as prior 'live' felony convictions"); *State v. Riser,* 704 So.2d 946 (La.Ct.App.1997) (noting that under Louisiana constitution full executive pardon by governor, upon recommendation of Department of Corrections, restores offender to "status of innocence"). The Indiana Supreme Court's ruling to give pardons such effect must be judged against its notion that a pardon is "issued to correct past injustice, as where after-discovered facts convince the executive that there was no guilt in the first instance ... or where there are extenuating circumstances." *Kelley v. State,* 204 Ind. 612, 185 N.E. 453, 459 (1933).

This view is based upon the literal application of the theory that the pardon "blots out" guilt, and "wipes out" the offense, which is then regarded as never having been committed. *People v. Biggs,* 9 Cal.2d 508, 71 P.2d 214 (1937). Courts following this reasoning have concluded the additional punishment imposed on a subsequent offense is not done because there is a subsequent offense alone, but as a consequence of the prior offense. *State v. Clifton,* 125 N.C.App. 471, 481 S.E.2d 393 (1997). Therefore, because the prior offense was eviscerated and its consequences removed by the full pardon, the pardoned prior conviction cannot be considered. *Id. See also* 39 Am.Jur.2d *Habitual Criminals* § 13 (1968) (on premise that pardon "maketh a new man" and obliterates guilt and offense, some courts have held that pardon, except when conditional, prevents use of prior conviction to enhance punishment in criminal proceedings).

### C. South Carolina Statutory Law

We now turn to an evaluation of our own statutory law. Pursuant to S.C.Code Ann. § 24–21–940(A) (1989), a pardon means "that an individual is fully pardoned from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty or whatever else the law has provided." In regard to the rights restored by a pardon, S.C.Code Ann. § 24–21–990 (Supp.1998) provides:

A pardon shall fully restore all civil rights lost as a result of a conviction, which shall include the right to:

(1) register to vote;

(2) vote;

(3) serve on a jury;

(4) hold public office, except as provided in Section 16–13–210;

(5) testify without having the fact of his conviction introduced for impeachment purposes to the extent provided by Rule 609(c) of the South Carolina Rules of Evidence;

(6) not have his testimony excluded in a legal proceeding if convicted of perjury; and

(7) be licensed for any occupation requiring a license.

Subsequent to the passage of § 24–21–940(A), the General Assembly enacted the repeat offender statute, S.C.Code Ann. § 56–5–2940 (Supp.1998):

For the purposes of this chapter **any conviction,** entry of a plea of guilty or of nolo contendere or forfeiture of bail, for the violation of any law or ordinance of this or any other state or any municipality of this or any other state that prohibits any person from operating a motor vehicle while under the influence of intoxicating liquor, drugs, or narcotics **shall constitute a prior offense** for the purpose of any prosecution for any subsequent violation hereof. Only those offenses which occurred within a period of ten years including and immediately preceding the date of the last offense shall constitute prior offenses within the meaning of this section (emphasis added).

### D. Statutory Construction

 This Court examines the applicable statutes giving due deference to the legislative will. Predominantly, we analyze the statutory language so as to glean the legislative intent.

 The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998); *City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the

light of the intended purpose of the statute. *Ray Bell Constr. Co. v. School Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998). The determination of legislative intent is a matter of law. *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck,* 330 S.C. 371, 498 S.E.2d 894 (Ct.App. 1998).

The legislature's intent should be ascertained primarily from the plain language of the statute. *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). Words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 468 S.E.2d 649 (1996); *City of Sumter Police Dep't, supra.* When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Strother, supra.* The terms must be construed in context and their meaning determined by looking at the other terms used in the statute. *Southern Mut. Church Ins. Co. v. South Carolina Windstorm and Hail Underwriting Ass'n,* 306 S.C. 339, 412 S.E.2d 377 (1991). Courts should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997).

If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no need to employ rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995); *Brassell, supra.* When the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373 (1994). However, if the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *The Lite House, Inc. v. J.C. Roy, Co.,* 309 S.C. 50, 419 S.E.2d 817 (Ct.App.1992).

Statutory provisions should be given reasonable and practical construction consistent with the purpose and policy of the entire act. *Stephen, supra.* In interpreting a

statute, the language of the statute must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Systems Corp. v. Leatherman*, 309 S.C. 174, 420 S.E.2d 843 (1992). Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law. *City of Sumter Police Dep't, supra.*

In applying the rules of statutory construction to the statutes involved in the case *sub judice*, we come to the ineluctable conclusion that the General Assembly's intent in enacting § 56-5-2940 was to provide for enhancement of punishment in the face of a statutory pardon. The statutes concerning pardons lack any indication of legislative intent that a pardon erases the defendant's conviction or precludes it from being considered as a "prior offense" under a statute enhancing the punishment for a subsequent conviction. To the contrary, while *forgiveness* accompanies a pardon, the rules regarding public office and testimonial impeachment demonstrate an unwillingness to *forget* the conviction. Despite the restoration of civil rights, a pardoned conviction remains a conviction in South Carolina.

If obliteration of the conviction had been the General Assembly's intent, it could have so provided, particularly after the decision of *Bay v. South Carolina Hwy. Dep't*, 266 S.C. 9, 221 S.E.2d 106 (1975), which is congruent with the majority view of pardons. In that case, a motorist, subsequent to his receiving a full pardon on his convictions for reckless homicide and leaving the scene of an accident, filed a petition for an order requiring the State Highway Department to permit him to apply for the reissuance of his driver's license free of any disqualification from the prior, mandatory license suspension. The trial court granted the petition and the Highway Department appealed. In discussing whether restoration of driving privileges would follow the pardon of a driving offense, the Court ruled:

> While the pardon relieved respondent of his punishment, it did not operate to restore his driver's license, which his conviction forfeited. Under [*Parker v. State Hwy. Dep't*, 224 S.C. 263, 78 S.E.2d 382 (1953)], the suspension of respondent's license was a civil consequence of his convictions of reckless homicide and leaving the scene of an

accident. The suspension constituted, in effect, a finding, that by reason of respondent's convictions, he was no longer qualified to enjoy the privileges granted under the license to operate a motor vehicle. Consequently, the public safety required that his license be suspended. The suspension was to protect the public and not to punish respondent.

The following from *Prichard v. Battle,* 178 Va. 455, 17 S.E.2d 393 [ (1941) ], cited with approval in *Parker,* properly disposes of the issue:

"... while the pardon granted the petitioner relieves him from the punishment or penalty which the State might have exacted of him for the offense, **it does not wipe out the fact of his conviction** or the fact that by reason of the act committed he is put in a class of persons regarded by the State as unfit to drive automobiles on the highways without making additional provision for the safety of others. If one who leaves the scene of an accident in which his car is involved becomes by reason of such an act unfit to exercise the privilege of driving an automobile on the highways, he is not rendered fit simply because the State's Executive has relieved him of the burden of paying a fine or serving a sentence in prison for the act done."

*Bay,* 266 S.C. at 13, 221 S.E.2d at 107–08 (emphasis added). Even though *Bay* addresses administrative penalties in regard to restoration of driving privileges, the result of *Bay* involves "collateral" consequences.

The intent of the General Assembly to include pardoned convictions to enhance the punishment for a subsequent conviction is clearly demonstrated by the use of the phrase "any conviction." For purposes of subject matter jurisdiction, the prior conviction for DUI in 1990 can be used to enhance the offense because it falls within the purview of § 56–5–2940.

## II. CONCLUSION

We adopt the majority rule that the pardon of a conviction does not preclude such conviction from being considered as a "prior offense" under a statute enhancing the punishment for a subsequent conviction. The trial court did not err in using Baucom's pardoned 1990 DUI conviction to augment his pun-

ishment for the current DUI conviction. Accordingly, Baucom's conviction is

**AFFIRMED.**

STILWELL, J., concurs.

HOWELL, C.J., dissents in a separate opinion.

HOWELL, Chief Judge (dissenting):

I respectfully dissent and would reverse, because I disagree with the majority's ruling that "the General Assembly's intent in enacting [section] 56–5–2940 was to provide for enhancement of punishment in the face of a statutory pardon." In my view, enhancement of punishment of future crimes due to a pardoned crime is a collateral consequence of the pardoned crime.

" 'Pardon' means that an individual is fully pardoned from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty or whatever else the law has provided." S.C.Code Ann. § 24–21–940(A) (1989). Under the rules of statutory construction, a court must determine and follow legislative intent "with reference to the meaning of the language used and the subject matter and purpose of the statute." *State v. Ramsey*, 311 S.C. 555, 561, 430 S.E.2d 511, 515 (1993). The statute's words "must be given their plain and ordinary meaning." *State v. Robinson*, 310 S.C. 535, 538, 426 S.E.2d 317, 318 (1992). "A statute is not to be read in an atmosphere of sterility, but in the context of what actually happens when human beings go about the fulfillment of its purposes." *Kinard v. Fleet Real Estate Funding Corp.*, 319 S.C. 408, 412, 461 S.E.2d 833, 835 (Ct.App.1995).

In the case at bar, the repeat offender statute's language of "any conviction" must be read in light of plain language of section 24–21–940(A). Collateral means "[a]ddditional or auxiliary; supplementary; ... accompanying as a secondary fact, or acting as a secondary agent." *Black's Law Dictionary* 261 (6th ed. 1990). Although the primary effect of a conviction is the punishment for that specific crime, the conviction may serve to increase the punishment for a future crime as provided for in section 56–5–2940. This increase in punishment is a

supplementary consequence of the original conviction. To interpret "any conviction" in the repeat offender statute as including pardoned crimes ignores the prohibition against imposing collateral consequences for a pardoned crime in section 24–21–940(A). Thus, the repeat offender statute cannot include pardoned crimes.[1]

As support for its holding, the majority relies on the supreme court's decision in *Bay v. South Carolina Highway Department*, 266 S.C. 9, 221 S.E.2d 106 (1975). In that case, the court found two separate suspensions of Bay's driver's license valid even though the convictions upon which the suspensions were based had been pardoned.[2] *Id.* at 11–13, 221 S.E.2d at 107–08. The court reasoned that the license suspensions were civil penalties, and not part of the punishment of the pardoned crime. *Id.* In addition, the pardon did not wipe out Bay's conviction, it merely excused him from the crime's punishment. *Id.* Nevertheless, *Bay* was decided in 1975. 266 S.C. at 9, 221 S.E.2d at 106. On June 12, 1981, Act number 100, section fourteen of which is codified at sections 24–21–940 through 24–21–1000, became law. *See* Act No. 100, 1981 Acts 333, 350. Because *Bay* was decided prior to the enactment of section 24–21–940(A), the question of statutory interpretation at bar was not before the supreme court in *Bay*. Therefore, it is not determinative of the current situation.

Moreover, when agreeing to the language in section 24–21–940(A), the legislature had full knowledge of *Bay* and intended to overrule its effect. *See State v. Bridgers*, 329 S.C. 11, 14, 495 S.E.2d 196, 197–98 (1997) (noting that the courts presume the General Assembly aware of the common law when enacting legislation). Although statutes in derogation of the common law must be construed strictly, the construction cannot

---

1. Given that this Court is constrained by the statutory definition of pardon, other states' conclusions about and policies behind their own pardon and repeat offender laws are not helpful here. *See Purvis v. State Farm Mut. Auto. Ins. Co.*, 304 S.C. 283, 288, 403 S.E.2d 662, 665 (Ct.App.1991) ("The General Assembly has the power to prescribe legal definitions by statute, and such definitions are binding upon courts and should prevail.").

2. Ultimately, the court reversed the suspensions because the trial court incorrectly ordered them to be served concurrently. *Bay*, 266 S.C. at 14, 221 S.E.2d at 108.

lessen the statute's scope or defeat obvious legislative intent as manifested in the ordinary meaning of the language used. *See* 82 C.J.S. *Statutes* § 393 at 940–41 (1953). The words "collateral consequences" in section 24–21–940(A) clearly indicate legislative intent to reverse the reasoning of *Bay*.

For the foregoing reasons, I respectfully dissent from the majority's holding that Baucom's conviction could be used for sentence enhancement purposes.