This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40593

**STATE OF NEW MEXICO, ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**GERALD H.,**

Respondent-Appellant,

and

**VIVION H.,**

Respondent,

**IN THE MATTER OF JEREMY H.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY
Jarod K. Hofacket, District Court Judge**

Mary E. McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Assistant Children's Court Attorney
Albuquerque, NM

for Appellee

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Rio Law Firm
Francis J. Rio, III
Clovis, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}**     Father appeals a district court judgment terminating his parental rights to Child. This Court issued a notice of proposed summary disposition, proposing to affirm. Father responded to our notice with a memorandum in opposition in which he complained about the inadequacy of both the docketing statement and this Court's summary calendar process. We issued an order allowing appellate counsel an extension of time to obtain the audio recording of the termination hearing and to file an amended memorandum in opposition making use, as counsel deemed necessary, of whatever facts that recording contained. Appellate counsel has now filed an amended memorandum in opposition. Having duly considered that memorandum, we remain unpersuaded that error occurred below.

**{2}**     This Court's notice proposed that although the termination order on appeal contains some findings consistent with a termination based upon presumptive abandonment, pursuant to NMSA 1978, Section 32A-4-28(B)(3) (2005, amended 2022), the dispositive conclusions recited in the termination order parallel the requirements of Subsection (B)(2) of that statute, which authorizes termination based upon abuse or neglect that is unlikely to be remedied in the foreseeable future. [2 RP 448-49] Father's amended memorandum agrees that the district court did not find a presumptive abandonment. [AMIO 12-18] Father, nonetheless, asserts that by "borrowing findings from [Subsections] (B)(2) and (B)(3) and then mixing them together," the judgment somehow "fail[ed] to sustain the deterioration of Father's bond while incarcerated as evidence to support termination pursuant to [Subs]ection (B)(2)." [AMIO 18] It is unclear how this argument is responsive to our proposed disposition, which did not suggest that evidence regarding a "deterioration of Father's bond while incarcerated" was a necessary element of termination pursuant to Subsection (B)(2). Instead, we explicitly noted that although this finding might have supported a termination pursuant to Subsection (B)(3), the actual termination that occurred in this case relied upon different findings and conclusions, which were consistent with a termination pursuant to Subsection (B)(2). [CN 2] Accordingly, our notice proposed that termination was appropriately based upon abuse or neglect, the causes of which are unlikely to be remedied in the foreseeable future, despite the reasonable efforts of Children, Youth and Families Department (the Department), "rather than a presumptive abandonment pursuant to [S]ubsection (B)(3)." [CN 3]

**{3}**    Father's amended memorandum agrees that a termination pursuant to Subsection (B)(2) requires the Department to establish and the district court to find that:

> (1) the child was abused or neglected; (2) the conditions and causes of abuse or neglect are unlikely to change in the foreseeable future; and (3) [the Department] has made reasonable efforts to assist the parent in adjusting the causes and conditions which render him or her unable to properly care for the child.

[AMIO 19] On appeal, Father does not challenge the district court's finding of neglect. [2 RP 424; CN 4]

**{4}**    With regard to whether the conditions and causes leading to that neglect are likely to change, Father asserts that the Department failed to establish this fact by clear and convincing evidence. [AMIO 20] Of relevance to the likelihood of change, our notice pointed out that Father's docketing statement did not challenge certain findings made in the district court's order:

> That order finds that between May of 2021 and July of 2022, Father corresponded only three times with Child, despite the Department providing addressed and stamped envelopes so that Father could write to Child. [2 RP 428] That order also finds that Father has refused to sign a release of information that would allow the Department to assess his progress and compliance with the treatment plan. [2 RP 437] Apparently as a result of that refusal, there was conflicting evidence regarding whether Father completed a self-control program or a functional literacy program while incarcerated. [2 RP 434] Nonetheless, the district court found that there was no dispute that "he only completed one of the two and neither of them are sufficient in themselves to ready [him] to parent [Child]." [Id.]

[CN 5]

**{5}**    With regard to Father's correspondence with Child, Father's amended memorandum directs our attention to a permanency planning report filed with the district court prior to the termination hearing, which recites he had written "several letters" to Child, including "drawings such as a truck and another of a cartoon." [AMIO 36; DS 6; 2 RP 279] Father does not assert that this planning report was received in evidence at the hearing, but does assert that it "strongly suggests Father was sending more than three letters, whether [the Department] tracked them or not." [AMIO 36] We note that a caseworker's statement that Father sent several letters does not contradict the district court's finding that he corresponded with Child three times. And, more importantly, Father's amended memorandum does not assert that the evidence actually received at the termination hearing—testimony that Father sent one letter and two pictures—failed to support the more specific finding made by that court. [AMIO 36-37]

**{6}**     With regard to the ambiguous evidence of programs completed while incarcerated, Father's amended memorandum informs us, based upon a review of the audio transcript, that the testimony "tends to support that Father completed a literacy program." [AMIO 34] However, as the district court noted, "[w]hether he completed the Functional Literacy class or the Self Control class is not particularly material; it is undisputed he only completed one of the two." [2 RP 434] Of more significance, Father refused to sign a release of information—as required by his treatment plan—that would have allowed the Department access to this information as well as the results of a psychosocial evaluation that was also required by his treatment plan. [AMIO 28] As a result, it is unclear whether the psychosocial evaluation took place. [Id.] Father's amended memorandum suggests various ways in which the Department could have made greater efforts to assist Father in obtaining a psychosocial evaluation. [AMIO 28-30] That memorandum, however, does not suggest any way in which the Department could have overcome the obstacle created by Father's refusal to sign a release that would have allowed access to the results of any such an evaluation.

**{7}**     According to Father's treatment plan, the purpose of that evaluation was to "identify any needs he may have and follow recommendations." [DS 4] In order for his caseworker to assess Father's needs, to assess his progress, to make appropriate recommendations, and to "develop a treatment plan directed to assist the parent in his or her specific circumstances and individualized needs" [AMIO 30], it was necessary for Father to execute a release that would have allowed access to what Father, himself, calls "a baseline document—the psychosocial evaluation" [id.] As the district court pointed out: "Such a release is basic and foundational to a treatment plan. It is not a final step that can be completed near the end of a treatment plan. It is the basis for fine tuning treatment and monitoring progress and compliance." [2 RP 468] More than anything else, it appears Father's refusal to sign a release prevented him from progressing in his treatment plan so that the conditions and causes of Child's neglect could be addressed. And, ultimately, Father's amended memorandum does not persuade us that the district court erred by finding that, "[e]ven if [Father] were released from incarceration now, he and the child do not share [a] parent-child bond and he would not have the parenting skills necessary to care for his child who has special needs." [2 RP 438] On that basis, the district court appropriately concluded that the conditions and causes of Child's neglect are unlikely to change in the foreseeable future.

**{8}**     With regard to the Department's efforts to assist Father, we note that "[w]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 23, 132 N.M. 299, 47 P.3d 859. In the present case, it is unclear what more the Department could have done to assist Father, largely because Father refused to share basic information about his own needs with the Department. The recalcitrance of Father's problems is also somewhat unclear to everyone involved in this case, given Father's refusal to sign a release. What is clear, however, is that Father was not cooperating with the Department in its efforts to provide

him with an individualized treatment plan designed to address those problems, whatever they were. We conclude that, given the circumstances of this case, the evidence supported the district court's finding that the Department made reasonable efforts to assist Father.

**{9}** Finally, to the extent that Father's counsel continues to object to a resolution of this appeal on this Court's summary calendar, "without an official transcript of proceedings having been filed" [AMIO 2], we note that counsel has had the benefit of reviewing the entire existing record of this case. As a result, assignment to this Court's general calendar would not make available any fuller picture of what occurred below, and it appears Father and his counsel have not only been "afforded a record of sufficient completeness to permit proper consideration of [his] claims," but have had access to the entirety of the existing record. *State v. Ibarra*, 1993-NMCA-040, ¶ 9, 116 N.M. 486, 864 P.2d 302 (internal quotation marks and citation omitted), *cert. granted*, 115 N.M. 602, 856 P.2d 250 (1993), *writ quashed sub nom. State v. Rodriguez*, 117 N.M. 744, 877 P.2d 44 (1994).

**{10}** Father's amended memorandum still does not address many of the extensive factual findings made by the district court, including facts relied upon in our notice. [2 RP 423-450; CN 5-7] Ultimately, we conclude that Father has not met the burden shouldered by every appellant—regardless of their party designation below—to show that the trial court committed error. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (noting that the party claiming error bears the burden of showing such error); *see also Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the burden is on the appellant to clearly demonstrate that the trial court erred). More specifically, in the context of our summary calendar, we conclude that Father has not met his burden "to clearly point out errors in fact or law" in our proposed disposition. *Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683; *State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003, *superseded by statute on other grounds as stated in State v. Harris*, 2013-NMCA-031, ¶ 3, 297 P.3d 374. Thus, for the reasons stated here and in our notice of proposed summary disposition, we affirm the district court's judgment terminating parental rights.

**{11}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**