STATE OF WEST VIRGINIA *v.* RAY FISHER

(No. 9194)

Submitted October 14, 1941. Decided December 9, 1941.

*S. A. Powell* and *Dewey S. Wass,* for plaintiff in error.
*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

KENNA, PRESIDENT:

In the Circuit Court of Ritchie County Ray Fisher was found guilty as charged under an indictment alleging the commission of a second felony by reason of the larceny of one black steer marked with red paint valued at fifty-five dollars, the property of either Ritchie County Live Stock Sales Company or Okey Barker, the indictment having two counts, and was sentenced to the minimum of six years in the penitentiary.

When arraigned the defendant tendered a special plea admitting his first conviction, and setting up a conditional pardon of the first offense based upon after-discovered evidence of mistaken identity. To this plea the state interposed a demurrer which was sustained; and the defendant, after being arraigned and pleading not guilty, thereafter filed his written motion that the issue raised by his plea of not guilty to the entire charge contained in the indictment be divided so that the then current issue of guilt or innocence could be tried first, and that if convicted of the charge of grand larceny, his plea of not guilty be treated as a denial of his former conviction, and the issue thereon joined be separately submitted.

The motion for separate submissions being overruled, the defendant having pleaded not guilty, proof was taken followed by submission, verdict and sentence, the errors assigned being five in number as follows:

(1) In sustaining the demurrer to the accused's special plea.

(2) In overruling the defendant's pre-trial motion.

(3) In refusing to give defendant's instruction number eight which stated only the sentence which would follow a conviction, without stating that the accused was charged with the commission of a second felony. Amended so as to include the latter statement, the instruction was given as instruction number one.

(4) In overruling the defendant's motion to set the verdict aside and grant him a new trial for the reasons assigned in said motion, including comments made by the prosecuting attorney in his closing argument concernng the power of executive clemency and the benefit the accused might derive from its use.

(5) That the sentence, although the minimum that can be added for the commission of a second felony, is a violation of Article III, Section 5 of the West Virginia Constitution, as being not "proportioned to the character and degree of the offense."

The proof shows that at the time alleged, Fisher, a man of forty years, was farming near Lamberton, Ritchie County, having formerly been a butcher, and was the owner of a small Ford pick-up truck in which he hauled cattle for hire to and from pens of the Ritchie County Live Stock Sales Company at Lamberton. That company was engaged in the business of selling cattle, or livestock, at auction and maintained a number of cattle pens with openings into what was called the "ring" in which the cattle on sale were placed to be offered by an auctioneer.

The case for the prosecution rests upon testimony that on the morning of July 21, 1937, Okey Barker had driven several head of cattle owned by him to one of the company's pens, and that afternoon when his cattle were to be sold and were driven into the ring for that purpose, he observed that the black steer in question, and another, were not among those driven from the pen.

Inquiry disclosed that Fisher had been seen driving his truck loaded with a black steer upon the road between Lamberton and Ellenboro, a town within about a mile and a half of Lamberton, near where Fisher's brother-in-law was living upon a farm that included pasture land. That evening after dark, a member of the Department of Pub-

lic Safety and Paul Riggs, manager of the live stock company, after having arrested Fisher following admission that he had taken the black steer from the company's pen and an offer to surrender it providing that they would not charge him with its theft, went to this farm and after having found and identified the steer in question drove it to the Riggs farm. Fisher, in an effort to persuade Mrs. Paul Riggs to use her influence in his favor, stated to her that his reason for taking the steer was the fact that his wife was ill and that he lacked the means of sending her to a hospital. He stated that at the time he was maudlin. Later a warrant was issued for Fisher's arrest.

Under his plea of not guilty, the testimony offered by the defendant did not deny the actual taking of the property described in the indictment, but rested upon two major contentions, one being that due to intoxication, his mental condition was such that he was unable to harbor an intention of depriving another of the use and possession of property, and the other, that pursuant to an agreement with two unknown and unidentified individuals not produced as witnesses, the accused was misled into the belief that he was acting under an agreement with the owner of the black steer to carry it in his truck from the company's pen to the pasture land of the farm near Ellenboro, where it was found, Fisher producing two witnesses who testified that they had overheard a conversation to this effect between two men that they had never seen before and Fisher.

Dealing with the first question of assigned error, we are not thereby concerned with the effect of a full pardon and with the question of whether under our law it results in the absolute restoration of citizenship to the extent that both the result and the fact of a former conviction in legal effect are rendered non-existent, although in passing, we cannot refrain from observing that such a rule is plainly the result of a legal fiction and that a fiction which is contrary to a known and established fact is a dangerous foundation upon which to base a legal principle. But here we have a conditional pardon reciting the fact that Fisher

had commenced to serve a ten-year sentence on February 4, 1931, and placing the executive grant upon the condition that if he should at any time before the expiration of his said ten-year sentence again violate the law of this state, he should be returned to the penitentiary to complete the service of his term. It is to be noted that a breach of the condition, subject to which the pardon was granted, occurs at the time of again violating the law of this state, not at the time of being convicted of a second offense. Therefore, the effect of the conviction in this instance would be to render the pardon inoperative as of July 21, 1937, so that at the date of trial, if guilty, there would be no reason why Fisher's former conviction should not be shown. We do not believe that in the discussion of the effect of a pardon in Blackstone, and in a number of cases the opinions in which are largely predicated thereon, there is anything disturbing. The framework upon which the common law theory of pardon rests is that all governmental power is derived from the sovereign, and, therefore, that by order in specific cases the monarch could set aside, or prevent the operation of, a judicial judgment. Once fully done, he could not revive the judgment, but he could rest the operation of his order upon a condition either precedent or subsequent. Now executive clemency is shaded into different degrees, and, while being a constitutional power, not subject to legislative control, it is subject to legislative regulation and the legislature has said indirectly by the enactment of the habitual criminal statute that a second conviction, without excepting cases of the service of sentence, pardon, or parole from the first, shall incur the penalty prescribed in the statute. In defining offenses and prescribing punishment, the legislative power is limited only by the constitution. However, we are not dealing with the effect of a full pardon and we are clearly of the opinion that a conditional pardon, the terms of which have been violated, does not remain in effect to preclude the penalty prescribed for a second offense.

As to the defendant's pre-trial motion, it would seem to have been based upon the possibility that this Court

would establish a rule dividing an indictment for a second offense into two issues to be separately presented to the same jury. After the discussion contained in *State* v. *Stout*, 116 W. Va. 398, 180 S. E. 443, in which we undertook to encourage restricting the proof of the former conviction in cases where there was no issue raised on the question, we are under the impression that it would hardly be consistent for this Court to promulgate a retroactive rule differing from the theory therein discussed, to have an effect upon cases which have been tried and conducted as therein indicated. How the allegation of a former conviction shall be treated rests very largely with the defendant. In this case, having tendered a plea which constituted a verified admission of his first conviction, he strongly resisted every effort of the prosecution to show that fact to the jury, the trial judge treating the plea, to which he had sustained a demurrer, as constituting an admission of record of the former conviction. We see no error prejudicial to the accused that resulted in not granting the pre-trial motion.

The third assignment of error is based upon the trial court's refusal to give defendant's instruction number eight, which, without mentioning the alleged former conviction, would have told the jury that a verdict of guilty as charged in the indictment would result in the accused being sent to the penitentiary for from six to fifteen years. The instruction as offered was included in an instruction which was given, changing it only by explaining that a part of the penalty was due to the fact that the accused was being tried for a second felonious offense. Upon a reading of the instruction rejected and that given, it is at once apparent that there is no material difference in their substance. The indictment charged a former conviction, and upon retiring, the jury was furnished with the original for its use in reaching their verdict. The words in the instruction as tendered by the defendant, "as charged," could be construed only as a reference to the indictment. The charge of a former conviction was necessarily to be considered by the jury. It is not error to inform the jury of the prescribed penalty. The added

penalty due to the former conviction did not, of course, appear from the indictment, although the former conviction was charged in detail. The fact of an additional penalty is stated in the instruction as given, naming no period. Subject to the sufficiency of the state's proof, we perceive no error in the instruction as given. Further, we think that it was a substantial compliance with defendant's request as contained in his instruction number eight.

As to the fourth assignment of error, in so far as it relates to statements made by the prosecuting attorney in his closing argument concerning the possibility of the accused being the beneficiary of executive clemency at a later date, there having been no objection to it at the time and no request made of the trial judge to admonish the jury concerning its effect, we do not believe that it would be proper matter to be considered here.

There is, however, a question raised upon this motion which we regard as of more serious consequence, and that is the method by which a former conviction was sought to be established. Perhaps due largely to the attitude of the accused in his pre-trial motion and his resistance of every effort to have the former conviction considered by the jury in the case at bar, there was no testimony taken concerning it. The accused had tendered his verified special plea setting up his conditional pardon from the former conviction which, to all non-technical intents and purposes, constituted an admission under oath. The trial judge sustained a demurrer to his special plea, and thereafter no showing was made and no testimony was tendered in order to prove the former conviction. As we have stated in former cases, there should be no unnecessary spread in the showing of a former conviction as here charged, the final order sentencing the accused and the proof of his identity being sufficient to prove that element of the state's case. The trial judge in this case was making a commendable effort to avoid prejudicing the jury against the accused by overruling the state's motion to strike defendant's special plea after demurrer sustained thereto and treating it as an admission of the

former conviction. Unfortunately, the admission did not, in that manner, reach the jury.

In spite of the rigidity of the rule spoken of by this Court in the case of *Barkley* v. *Western Maryland Railroad Co.*, 81 W. Va. 795, 802, 95 S. E. 443, which would preclude even in civil cases the use of the special plea in evidence, we believe that the better reasoned rule and that sustained by the great weight of authority, treats a verified plea as constituting admissible evidence of the material matters of fact therein alleged. (See 14 A. L. R., 22-72 as to rule in civil cases.) Certainly sworn statements of a party litigant in contradiction of a material position constitute an admission against interest. We see no reason why admission against interest, as distinguished from a confession, should not be admissible in criminal cases. However, here the admission contained in the rejected plea was not introduced and did not reach the jury and, therefore, there having been no showing of a former conviction before the jury, we are of the opinion that the proof upon which its verdict of guilty as charged rested is insufficient.

The fifth ground of assigned error is based upon the position that the penalty imposed under Code, 61-11-18, is out of proportion to the character and degree of the offense, and therefore violative of Article III, Section 5 of the Constitution of this State. We think that this question has been settled by a number of the former holdings of this Court, as well as of the Supreme Court of the United States. *Graham* v. *State*, 70 W. Va. 793, 224 U. S. 616, 32 S. Ct. 583, 56 L. Ed 917; *State* v *Graham*, 68 W. Va. 248, 252, 69 S. E. 1010, 40 L. R. A (N. S.) 924

For the foregoing reason, the judgment of the Circuit Court of Ritchie County is reversed and the case remanded.

*Reversed and remanded.*