HOMER JACK DEAN

*v.*

OREL J. SKEEN, *Warden, Etc.*

(CC 789)

Submitted April 8, 1952. Decided April 29, 1952.

Fox, JUDGE, not participating.

*Everett G. Cox,* for petitioner.

*Chauncey Browning,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for respondent.

RILEY, PRESIDENT:

In this proceeding in *habeas corpus ad subjiciendum* of Homer Jack Dean against Oral Skeen, Warden of the West Virginia penitentiary, instituted in the Circuit Court of Marshall County, the circuit court overruled the respondent's demurrer to the petition and on the joint motion of the parties certified two questions to this Court: (1) After a full pardon, can a former conviction be used in order to impose a sentence under the habitual criminal act; and (2) can a *habeas corpus* proceeding be maintained to set aside an illegal sentence before the expiration date of that portion of the sentence which the same court should have legally imposed?

During the October, 1933, term of the Common Pleas Court of Cabell County the petitioner, Homer Jack Dean, was sentenced to serve a two-year period in the State penitentiary at Moundsville for the commission of a felony, and at the January, 1937 term of the Intermediate Court of Kanawha County the petitioner was indicted and sentenced to serve five years in the State penitentiary. On March 10, 1945, the Governor of the State of West Virginia issued an unconditional pardon of the two offenses.

Later at the January, 1948, term of the Intermediate Court of Kanawha County the petitioner was indicted for grand larceny for the theft of an automobile, and upon a plea of guilty was sentenced to life imprisonment as an habitual criminal. The two prior felonies for which petitioner was sentenced and later pardoned by the Governor's unconditional pardon were used for the purpose of applying the habitual criminal statute in imposing the sentence of life imprisonment.

The conviction for grand larceny was had in June, 1948, and carries a penalty of from one to ten years in the penitentiary, so with earning good time petitioner would not be entitled to release until February 26, 1955; and by earning extra good time petitioner would not be entitled to release until June 22, 1953.

The respondent assigns as error the rulings of the circuit court in holding that: (1) The offenses for which petitioner has been pardoned may not be used as a basis for sentence under the habitual criminal act; and (2) in overruling the demurrer to the petition, as the petition on its face shows that petitioner has not served the portion of the sentence which the court had authority to impose for conviction of the theft of the automobile. These two assignments of error will be discussed *seriatim*.

The question whether a full pardon of a prior offense exempts the petitioner from the increased punishment of a life sentence under the habitual criminal statute, Code, 61-11-18 and 19, as amended by Chapter 26, Acts of the Legislature, Regular Session, 1939, and as amended and reenacted by Chapter 31, Article 11, Acts of the Legislature, Regular Session, 1943, should be decided in connection with the language used in the statute itself. Section 19 provides the procedure in the trial of persons for second and third offenses, and Section 18 provides, in part, that: "When any person is convicted of an offense and is subject to confinement in the penitentiary therefor, and it is determined, as provided in section nineteen of this article * * * that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life." Thus the statute provides for increased punishment in the case of a person who has been convicted one or more times of a crime punishable by confinement in a penitentiary, whether the offender is guilty or innocent of the prior offense or offenses. "The purpose of the statute is to permit trial courts to protect society from habitual criminals by the imposition of more severe sentences than would be justified by the conviction for the offense under trial alone." *State* v. *Stout,* 116 W. Va. 398, 402, 180 S. E. 443, 444.

Though the exact question has not been decided in this jurisdiction, this Court in *State* v. *Fisher,* 123 W. Va. 745, 748, 18 S. E. 2d 649, and *State ex rel. Coole* v. *Sims,* 133

W. Va. 619, 629, 58 S. E. 2d 784, 790, expressed the view that an unconditional pardon of a prior offense did not serve to destroy the historical effect of the conviction thereof. In *State* v. *Fisher, supra,* this Court, at page 748, said: "* * * we are not thereby concerned with the effect of a full pardon and with the question of whether under our law it results in the absolute restoration of citizenship to the extent that both the result and the fact of a former conviction in legal effect are rendered non-existent, although in passing, we cannot refrain from observing that such a rule is plainly the result of a legal fiction and that a fiction which is contrary to a known and established fact is a dangerous foundation upon which to base a legal principle." In *State ex rel. Coole* v. *Sims, supra,* the Court, at page 790 of the opinion, said: "* * * It will not do to say, nor do any of the authorities say, that the granting of a pardon wipes out the conviction and renders the party innocent dating back to the time he was convicted. If that rule be followed then every person pardoned, for whatever reason, even though his conviction was based upon his confession of guilt, would be entitled to use that pardon as the basis for claiming compensation for the period in which he was confined under his conviction. Giving to the pardon of the Governor its fullest effect, it does not, we think, afford any basis whatever for a finding of innocence on the part of the relator. Neither the Governor of this State, nor the Court of Claims, nor the Legislature, has any constitutional power to pass upon the guilt or innocence of a person charged with a crime. That power rests, under our Constitution, in the judicial department of the State government."

From a careful, though incomplete, examination of the authorities, both text and the decisions in other jurisdictions, we have ascertained that, according to the weight of authority, the fact that an accused was pardoned for a prior offense does not exempt him from the increased punishment provided for in an habitual criminal statute. In 24 C. J. S., Criminal Law, Section 1960 (h), it is stated: "While there are decisions to the contrary, according to

the weight of authority the fact that accused was pardoned for his prior offense does not exempt him from the increased punishment on a subsequent conviction."

In our sister State of Virginia, the Supreme Court of Appeals in *Edwards* v. *Commonwealth,* 78 Va. 39, 49 Am. Rep. 377, accepted the minority view; but later in the case of *Wilborn* v. *Saunders,* 170 Va. 153, 162, 195 S. E. 723, 727, that Court said: "A pardon is granted on the theory that the convict has seen the error of his ways, that society will gain nothing by his further confinement, and that he will conduct himself in the future as an upright, law-abiding citizen. However, it is fitting, under some circumstances, that certain conditions insuring good conduct should be required of the convict for this opportunity to escape the service of the full penalty prescribed for his former crimes. A future violation of the penal law, whether such takes place during the period that the pardoned convict was originally sentenced or thereafter, demonstrates that the time actually served by the convict was not enough to impress upon him the error of his old course of conduct, and that the pardon should never have been granted." We are in accord with the statement in the *Wilborn* case, and, because of the rationale expressed therein, it seems to us that the petitioner herein, who has broken faith with the pardoning authority and accepted the act of unconditional pardon, which is an act of grace extended to the petitioner and not a right vested in him, and who has demonstrated that he has not been deterred from further crime by pardon of the prior offenses, should not be permitted to use the pardon to prevent the application of the habitual criminal act. In the well considered opinion in *Jones* v. *State,* 141 Tex. Crim. Rep. 70, 147 S. W. 2d 508, the Court of Criminal Appeals of Texas reversed its prior holding in the case of *Scrivnor* v. *State,* 113 Crim. Rep. 194, 20 S. W. 2d 416, and held that notwithstanding a full pardon granted to the accused Jones, the State could utilize a prior conviction for the purpose of imposing the increased penalty under the Texas habitual criminal statute.

The cases in which the majority rule has been applied are numerous, and we shall, therefore, refer only to a few of them: *People* v. *Biggs*, 9 Cal. 2d 508, 71 P. 2d 214, 116 A. L. R. 205; *State* v. *Edelstein*, 146 Wash. 221, 262 P. 622; *Herndon* v. *Commonwealth*, 105 Ky. 197, 48 S. W. 989; *People of the State of New York ex rel. Martin Prisament* v. *Brophy*, 287 N. Y. 132, 38 N. E. 2d·468, 139 A. L. R. 667. For an excellent and exhaustive collation of authorities, see the following A. L. R. annotations: *People* v. *Gowasky*, 244 N. Y. 451, 155 N. E. 737, 58 A. L. R. 9, note 49 to 52; *People* v. *Brown*, 253 Mich. 537, 235 N. W. 245, 82 A. L. R. 341, note 362 and 363; *People* v. *Biggs*, 9 Cal. 2d 508, 71 P. 2d. 214, 116 A. L. R. 205, note 224 to 226, inclusive; *Re Theodore Jerry*, 294 Mich. 689, 293 N. W. 909, 132 A. L. R. 89, note 103 and 104; *People of the State of New York ex rel. Martin Prisament* v. *Brophy*, 287 N. Y. 132, 38 N. E. 2d 468; 139 A. L. R. 667, note 683 and 684.

The decisions in which the minority view has been adopted are seemingly based upon the postulate that an unconditional pardon serves to wipe out all the effects of the prior convictions and makes the offender "a new man", just as though he had never committed the crime. This view may have been drawn from Blackstone's Commentaries, Book 4, Chapter XXXI, Section 4, which reads, in part: "Lastly, the *effect* of such pardon by the king, is to make the offender a new man; to acquit him of all corporal penalties and forfeitures annexed to that offence, for which he obtains his pardon; and not so much to restore his former, as to give him a new, credit and capacity."; 2 Sharwood's Blackstone's Commentaries, 612; II Cooley's Blackstone, 4th Ed., page 1528. This view has been severely, and, in our opinion, soundly, criticized in Williston, "Does a Pardon Blot Out Guilt?", 28 Harvard L. Rev. 647, 655; and in *People* v. *Biggs, supra,* in which the California Supreme Court said: "The criminal character or habits of the individual, the chief postulate of habitual criminal statutes, is often as clearly disclosed by a pardoned conviction as by one never condoned. The broad generalizations quoted above ['a new man' and 'as

innocent as if he had never committed the offense'] are, if taken too literally, logically unsound as well as historically questionable." With this statement this Court is in full accord.

For the foregoing reasons and in the light of the foregoing authorities, which have adopted the majority view, we are of opinion that the unconditional pardon of petitioner's prior offenses did not operate to prevent the application of the habitual criminal statute, Code, 61-11-18 and 19, as amended by Chapter 26, Acts of the Legislature, Regular Session, 1939, and as amended and reenacted by Chapter 31, Article 11, Acts of the Legislature, Regular Session, 1943.

But even if our holding had been otherwise, the ruling of the Circuit Court of Marshall County on the second certified question should be reversed, for the reason that a conviction for grand larceny carries a penalty of from one to ten years in the penitentiary, so that by earning good time petitioner would not be entitled to release until February 26, 1955, and by earning extra good time he would not be entitled to release until June 22, 1953. In *Ex Parte Mooney,* 26 W. Va. 36, pt. 4 syl., this Court held: "Where a court has jurisdiction of the subject-matter and of the person, and it pronounces a severable judgment or sentence, one part of which is authorized by law and another distinct part is not so authorized, the prisoner will not be discharged on *habeas corpus,* when it does not appear that he has undergone the full punishment imposed by the legal portion of the sentence." See also the recent case of *Dye* v. *Skeen, Warden,* 135 W. Va. 90, 62 S. E. 2d 681, in which this Court ordered that the petitioner in the proceeding in *habeas corpus* involved therein be "remanded to the custody of the respondent [the Warden] until he has completely served the valid portion of his sentence of confinement in the West Virginia Penitentiary."

We therefore reverse the trial court's rulings on the demurrer and remand the case to the Circuit Court of

Marshall County to be dealt with in accordance with the principles herein enunciated.

*Rulings reversed;*
*case remanded.*