597 S.E.2d 311

**Mario PERITO, II, Plaintiff,**

v.

**THE COUNTY OF BROOKE, A Political Subdivision of the State of West Virginia, Defendant.**

**No. 31544.**

Supreme Court of Appeals of West Virginia.

Submitted March 9, 2004.

Decided May 6, 2004.

---

Stephen D. Herndon, Wheeling, for the Plaintiff.

Darrell V. McGraw, Jr., Attorney General, Jon R. Blevins, Assistant Attorney General, Charleston, for the Amicus Curiae West Virginia Attorney General.

Fred J. Giggenbach, Jr., Drug and Violent Crime Assistant Prosecutor, West Virginia Prosecuting Attorneys Institute, for the Amicus Curiae West Virginia Prosecuting Attorneys Institute.

David B. Cross, Prosecuting Attorney, Wellsburg, for the Defendant.

John A. Rogers, Executive Director, West Virginia Public Defender Services, Russell Cook, Director, Criminal Law Research Center, Charleston, for the Amicus Curiae West Virginia Public Defender Services.

Chief Justice DAVIS delivered the Opinion of the Court.

The Circuit Court of Brooke County presents this Court with a certified question asking whether a convicted felon who has been unconditionally pardoned by the Governor of the State of West Virginia is automatically restored the right to possess a firearm. Having before us the order certifying the question, the briefs and arguments of counsel, and the record submitted in connection with the question presented,[1] we find that

---

**1.** This Court also has before it the briefs of various amicus curiae.

such right is not automatically restored, but may be restored only upon compliance with the provisions of W. Va.Code § 61–7–7(c) (2000) (Repl.Vol.2000).

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mario Perito, plaintiff, was convicted by a jury, on or about February 7, 1992, of two counts of malicious wounding in violation of W. Va.Code § 61–2–9 (1978) (Repl.Vol.2000). The events which led to his conviction, according to the circuit court, were that on June 14, 1991, Mr. Perito maliciously wounded Nicholas Edward Lorenz by shooting him with a firearm and then striking him with an automobile. Mr. Perito was sentenced to a term of not less than two nor more than twenty years. After serving one year, Mr. Perito was released and placed on one year of home confinement. He was later placed on probation for the remainder of his sentence. In November, 1996, the Honorable Gaston Caperton, Governor of the State of West Virginia, granted Mr. Perito an unconditional pardon. The pardon stated, in relevant part:

> NOW, THEREFORE, I, GASTON CAPERTON, Governor of the State of West Virginia, by virtue of the power vested in me by the Constitution and other law of the State of West Virginia, do hereby GRANT to MARIO A.P. PERITO, II, a full, unconditional and complete PARDON for the said offense of malicious wounding committed by him in Hancock County, West Virginia. FURTHER, I do hereby ORDER that all relevant records maintained by the State of West Virginia and any of its political subdivisions be amended to reflect that MARIO A.P. PERITO, II has this day been fully, unconditionally and completely PARDONED for said offense recorded against him.

Thereafter, on August 13, 1999, Mr. Perito initiated a declaratory judgment action naming the County of Brooke as respondent and seeking a declaration that an unconditional pardon had restored to him various rights, including the right to vote, the right to hold public office, the right to serve on various juries, the right to hold certain employments prohibited to persons with felony convictions, the right to hold certain licenses prohibited to persons with felony convictions, and the right to possess firearms.

On November 8, 1999, the County of Brooke filed its answer admitting that Mr. Perito had been restored all but two of the aforementioned rights. The County indicated that it was without sufficient information to admit or deny whether an unconditional pardon restored to Mr. Perito the right to hold employments prohibited to those convicted of crimes, and it denied that the pardon restored to him the right to possess firearms. Mr. Perito then filed a motion for judgment on the pleadings and/or a motion for summary judgment. The circuit court treated the motion as one for summary judgment, denied the motion, and certified the following question for resolution in this Court:

> Whether a convicted felon who has been unconditionally pardoned by the Governor of the State of West Virginia is entitled to a restoration of rights such that the pardoned felon is exempted from the requirements of West Virginia Code § 61–7–7(c) [2]

---

**2.** The version of W. Va.Code § 61–7–7 in effect at the time Mr. Perito filed his declaratory judgment action read, in relevant part, as follows:

Notwithstanding any provision of this code to the contrary, no person who: (1) Has been convicted of a felony in this state or in any other jurisdiction; ... shall have in his or her possession any firearm or other deadly weapon: Provided, That any person prohibited from possessing a firearm or other deadly weapon by the provisions of this section may petition the circuit court of the county in which he or she resides and if the court finds by clear and convincing evidence that such person is competent and capable of exercising the responsibility concomitant with the possession of a firearm or other deadly weapon the court may enter an order allowing such person to possess such weapon if such would not violate any federal statute.

W. Va.Code § 61–7–7 (1989) (Repl.Vol.1997). In 2000, the statute was amended. The portions relevant to the certified question presently before this Court now state:

(a) Except as provided for in this section, no person shall possess a firearm as such is defined in section two [§ 61–7–2] of this article who:

requiring convicted felons to petition the Circuit Court and prove by clear and convincing evidence that the felon is competent and capable of exercising the responsibility concomitant with the possession of a firearm.

(Footnote added). The circuit court answered this question in the negative. We agree.

## II.

## STANDARD OF REVIEW

■ " 'The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*' Syllabus point 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996)." Syl. pt. 2, *Keplinger v. Virginia Electric & Power Co.,* 208 W.Va. 11, 537 S.E.2d 632 (2000). *Accord* Syl. pt. 2, *Charter Communications v. Community Antenna Serv., Inc.,* 211 W.Va. 71, 561 S.E.2d 793 (2002).

## III.

## DISCUSSION

Our analysis of the question herein certified requires us to consider the constitutional right to bear arms, the West Virginia Legislature's power to limit that right, and the nature of a gubernatorial pardon.

■ Mr. Perito complains that requiring him to petition the circuit court pursuant to W. Va.Code § 61–7–7(c) in order to regain his ability to possess a firearm when he has been granted an unconditional pardon by the

(1) Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
. . . .
(c) Any person prohibited from possessing a firearm by the provisions of subsection (a) of this section may petition the circuit court of the county in which he or she resides to regain the ability to possess a firearm and if the court finds by clear and convincing evidence that the person is competent and capable of exercising the responsibility concomitant with the possession of a firearm, the court may enter an order allowing the person to possess a firearm if such possession would not violate any federal law.
W. Va.Code § 61–7–7 (2000) (Repl.Vol.2000). Because we find no substantive difference between the relevant language contained in these

Governor violates his right to bear arms as guaranteed by the West Virginia Constitution, Article III, Section 22.[3] We disagree. In explaining our rationale for this conclusion we will, for the moment, assume that the Legislature intended W. Va.Code § 61–7–7(c) to apply to individuals who have received unconditional pardons of their convictions. Later in this opinion we will demonstrate the correctness of our assumption.

■ The right to bear arms is not absolute. In *State ex rel. City of Princeton v. Buckner,* 180 W.Va. 457, 377 S.E.2d 139 (1988), this Court struck down as unconstitutionally broad W. Va.Code § 61–7–1 (1975) (Repl.Vol.1989), which prohibited "the carrying of a dangerous or deadly weapon for any purpose without a license or other statutory authorization." Syl. pt. 2, in part, *Buckner.* The Court determined that W. Va.Code § 61–7–1 violated the Article III, Section 22 of the West Virginia Constitution because, "as a total proscription of the carrying of a dangerous or deadly weapon without a license or other authorization," it exceeded the Legislature's power to reasonably regulate the right to bear arms in that it prohibited "the carrying of weapons for defense of self, family, home and state without a license or statutory authorization." *Id.* at 462, 377 S.E.2d at 144. Nevertheless, the *Buckner* Court emphasized that its holding "in no way [meant] that the right of a person to bear arms is absolute." *Id.* at 463, 377 S.E.2d at 145. In this respect, the Court also held:

The West Virginia legislature may, through the valid exercise of its police

two versions of the statute, we will utilize the 2000 version of the statute in our analysis of the issues addressed in this opinion. We further note that following the submission of this case to this Court, the Legislature again amended W. Va.Code § 61–7–7. The latest amendment was passed on March 13, 2004, and will become effective ninety days from passage. The portions of the statute relevant to our analysis of the certified question presently before the Court were not altered in the 2004 amended version.

**3.** West Virginia Constitution, Article III, Section 22 states: "A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms guaranteed by article III, section 22 of the *West Virginia Constitution*, known as the "Right to Keep and Bear Arms Amendment."

Syl. pt. 4, *Id.* The Court cautioned, however, that "the legitimate governmental purpose in regulating the right to bear arms cannot be pursued by means that broadly stifle the exercise of [the right to bear arms] where the governmental purpose can be more narrowly achieved." *Id.* at 464, 377 S.E.2d at 146 (citing *City of Lakewood v. Pillow,* 180 Colo. 20, 501 P.2d 744 (1972)).

 The purpose for which the Legislature enacted W. Va.Code § 61–7–7 may be ascertained from the section's plain language. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, VFW,* 144 W.Va. 137, 107 S.E.2d 353 (1959). The obvious purpose of W. Va.Code § 61–7–7 is to guard the public safety. We believe the Legislature's method of achieving this goal has been crafted narrowly so as not to offend the Constitution. The statute does not prohibit all individuals who have been convicted of a felony and then received an unconditional pardon from ever possessing a firearm. Rather, it puts in place a procedure for the circuit courts to evaluate such individuals to determine if they are "competent and capable of exercising the responsibility concomitant with the possession of a firearm." W. Va.Code § 61–7–7(c). We need not, however, engage in an elaborate analysis of the constitutionality of this provision, as we expressly recognized in *Buckner* that "the prohibition against the possession or ownership of handguns by persons previously convicted

of a felony or other specified crime is widely accepted." *Id.* at 465, 377 S.E.2d at 147 (citations omitted). While we have determined that the application of W. Va.Code § 61–7–7(c) to persons who have received unconditional pardons for their convictions does not violate the West Virginia Constitution, the question of whether the Legislature intended the statute to apply to such individuals remains. Thus, we answer that question now.

 West Virginia Code Section 61–7–7(a) withholds the right to possess a firearm from any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." This language is plain. In similarly plain language, W. Va.Code § 61–7–7(c) provides the procedure for restoring that right in spite of the existence of a conviction. There exists no additional clause excluding from the scope of this statute convictions that have been subject to a pardon. If the Legislature had desired to exclude from the provisions Section 61–7–7(c) those individuals whose convictions had been pardoned, it could easily have done so. *See, e.g., Cheatham v. Commonwealth,* S.W.3d 349, 350 (Ky.Ct.App.2004) (quoting from Kentucky Revised Statutes 527.040, which provides in part that "(1) A person is guilty of possession of a firearm by a convicted felon when he possesses, manufactures, or transports a firearm when he has been convicted of a felony, . . . and has not: (a) Been granted a full pardon by the Governor or by the President of the United States."); *People v. Van Heck,* 252 Mich.App. 207, 214 n. 6, 651 N.W.2d 174, 178 n. 6 (2002) (observing that "[i]n Michigan, the Legislature has . . . exempted those who have been pardoned from the statutes prohibiting convicted felons from possessing firearms. *See* M.C.L. § 750.224f(4)."); *Pennsylvania State Police v. McCaffrey,* 816 A.2d 374, 376 (Pa. Commw.Ct.2003) (referencing Pennsylvania statutes 18 Pa.C.S. §§ 6109(e)(1)(viii) and 6123 regarding the issuance of a license to carry a firearm; and quoting section 6109(e)(1)(viii), which states: "[a] license shall not be issued to any of the following: . . . (viii) An individual who is charged with or has been convicted of a crime punishable

by imprisonment for a term exceeding one year except as provided for in section 6123 (relating to waiver of disability or pardons)"; the exceptions provided in section 6123 include "a full pardon from the Governor"). Because the Legislature chose not to exclude pardoned convictions from the scope of Section 61-7-7, we may not do so now.

> " '[I]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposely omitted.*' *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) (*citing Bullman v. D & R Lumber Company,* 195 W.Va. 129, 464 S.E.2d 771 (1995); *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994)). ([E]mphasis added). *See State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994). Moreover, '[a] statute, or an administrative rule, may not, under the guise of "interpretation," be modified, revised, amended or rewritten.' Syl. pt. 1, *Consumer Advocate Division v. Public Service Commission,* 182 W.Va. 152, 386 S.E.2d 650 (1989). *See Sowa v. Huffman,* 191 W.Va. 105, 111, 443 S.E.2d 262, 268 (1994)." *Williamson v. Greene,* 200 W.Va. 421, 426–27, 490 S.E.2d 23, 28–29 (1997).

*Longwell v. Board of Educ. of County of Marshall,* 213 W.Va. 486, 491, 583 S.E.2d 109, 114 (2003).

**4.** This provision of the West Virginia Constitution is codified in the West Virginia Code, wherein it is stated that:

> The governor shall have power to remit fines and penalties, in such cases and under such regulations as now are or may be prescribed by law; to commute capital punishment, and, except where the prosecution was carried on by the House of Delegates, *to grant reprieves, paroles and pardons, after conviction;* but he shall record in the journal of executive proceedings and communicate to the legislature, at its next session, the particulars of every case of fine or penalty remitted, of punishment commuted, and of reprieve, parole or pardon granted, with his reasons therefor. In any case wherein the governor has power to grant a pardon, instead of granting the same unconditionally, he may, after sentence, grant it upon such conditions as he may deem proper,

Because the Legislature is plainly within its authority to regulate the possession or ownership of firearms by individuals who have been convicted of a felony, we next consider whether the regulation runs afoul of the principles related to pardons. We find they do not.

The Governor's power to pardon is founded in Article VII, Section 11 of the West Virginia Constitution, which proclaims:

> The governor shall have power to remit fines and penalties in such cases and under such regulations as may be prescribed by law; to commute capital punishment and, except where the prosecution has been carried on by the house of delegates, *to grant reprieves and pardons after conviction;* but he shall communicate to the legislature at each session the particulars of every case of fine or penalty remitted, of punishment commuted and of reprieve or pardon granted, with his reasons therefor.

(Emphasis added).[4] This Court considered the definition of the term "pardon" in *State ex rel. Coole v. Sims,* 133 W.Va. 619, 58 S.E.2d 784 (1950). In *Coole,* the Court concluded that a gubernatorial pardon was not "a sound basis for a legislative finding of a moral obligation on the part of the State to compensate [a person who had been convicted of a crime] for damages for injuries to his [or her] person or reputation, on the ground of [his or her] innocence." Syl. pt. 2, in part. In reaching this conclusion, the Court commented:

> with the assent of the person sentenced; and, for the purpose of carrying into effect such conditional pardon, the governor may issue his warrant directed to any proper officer, who shall obey and execute it, instead of the sentence originally awarded. In any case in which the governor shall exercise the power conferred on him by the constitution to commute capital punishment, he may issue his order to the warden of the penitentiary, requiring him to receive and confine (and the warden shall receive and confine) in the penitentiary, according to such order, the person whose punishment is commuted. To carry into effect any commutation of punishment, the governor may issue his warrant directed to any proper officer, who shall obey and execute the same.
> W. Va.Code § 5-1-16 (1923) (Repl.Vol.2002) (emphasis added).

What is a pardon? In 39 Am.Jur. 523, it is stated: "A definition which has been designated by the courts as probably the most accurate and comprehensive, and as best expressing the legal signification of the word, is that a pardon is a declaration on record by the chief magistrate of a state or country that a person named is relieved from the legal consequences of a specific crime. Another definition commonly given is that a pardon is an act of grace proceeding from the power intrusted with the execution of laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. . . ."

133 W.Va. at 628–29, 58 S.E.2d at 790. *See also State ex rel. Forbes v. Caperton,* 198 W.Va. 474, 478, 481 S.E.2d 780, 784 (1996) (defining the term "pardon" as " '[a]n executive action that mitigates or sets aside punishment for a crime. An act of grace from governing power which mitigates the punishment the law demands for the offense and restores the rights and privileges forfeited on account of the offense.' ") . . . A pardon can come in many forms. For instance, an " 'absolute pardon' frees a criminal without restrictions, while a 'conditional pardon,' as is evident by its name, frees a criminal upon conditions." (citing *Black's Law Dictionary* 1113 (6th ed.1990) (internal footnote omitted)). The forgoing definitions plainly demonstrate that one who has received an absolute (or unconditional) pardon may not be subjected to further punishment for the crime pardoned. However, our cases have also established that the pardoned conviction is not erased for all purposes.

While the *Coole* Court recognized that a general effect of an unconditional pardon is to restore all the rights of a citizen to the individual pardoned, to relieve his or her punishment, and erase his or her guilt, it went on to clarify that, while the pardon renders the offender innocent in the eyes of the law from the time of the pardon forward, it does not wipe out the conviction or render the person innocent dating back to the time of the conviction:

It is true that the operation and effect of a pardon is generally understood to restore the person pardoned to all of his [or her] rights as a citizen. In 39 Am.Jur. 550, it is stated: "In the case of a full pardon, it relieves the punishment and blots out of existence the guilt of the offender to such an extent that in the eye of the law he is as innocent as if he had never committed the offense." That statement is a correct one. But it must be interpreted to apply to the standing of a person pardoned in the community in which he lives to make certain that he shall not thereafter be in anywise legally embarrassed from the commission of the offense of which he has been pardoned. It will not do to say, nor do any of the authorities say, that the granting of a pardon wipes out the conviction and renders the party innocent dating back to the time he was convicted. If that rule be followed then every person pardoned, for whatever reason, even though his conviction was based upon his confession of guilt, would be entitled to use that pardon as the basis for claiming compensation for the period in which he was confined under his conviction. Giving to the pardon of the Governor its fullest effect, it does not, we think, afford any basis whatever for a finding of innocence on the part of the relator. Neither the Governor of this State, nor the Court of Claims, nor the Legislature, has any constitutional power to pass upon the guilt or innocence of a person charged with a crime. That power rests, under our Constitution, in the judicial department of the State government.

133 W.Va. at 629, 58 S.E.2d at 790. *See also State v. Fisher,* 123 W.Va. 745, 748, 18 S.E.2d 649, 651 (1941) (addressing the consideration of a *conditional* pardon in connection with an habitual criminal statute and commenting in dicta that "we are *not* thereby concerned with the effect of a *full* pardon and with the question of whether under our law it results in the absolute restoration of citizenship to the extent that both the result and the fact of a former conviction in legal effect are rendered non-existent, although in passing, we cannot refrain from observing that such a rule is plainly the result of a legal fiction and that a fiction which is contrary to a known and established fact is a dangerous founda-

tion upon which to base a legal principle." (emphasis added)).

A short time after the *Coole* decision, this Court again wrestled with the scope of a pardon in *Dean v. Skeen*, 137 W.Va. 105, 70 S.E.2d 256 (1952). In *Dean*, the Court was asked to determine whether a conviction which had been the subject of an unconditional pardon by the Governor of West Virginia could be considered for purposes of imposing increased punishment under the habitual offender statute. The Court relied on *Fisher* and *Coole* and interpreted those cases as establishing the view that "an unconditional pardon of a prior offense [does] not serve to destroy the historical effect of the conviction thereof." *Dean* at 108, 70 S.E.2d at 257. The *Dean* Court then observed that the majority of jurisdictions agreed that " 'the fact that [an] accused was pardoned for his [or her] prior offense does not exempt him [or her] from the increased punishment on a subsequent conviction.' " *Id.* at 109, 70 S.E.2d at 258 (quoting 24 C.J.S., *Criminal Law*, § 1960(h)). Following this authority, the *Dean* Court held, in relevant part, that "[i]n a criminal prosecution for a felony, a pardon by the Governor of this State of a conviction or convictions for an offense or offenses punishable by confinement in the penitentiary, does not exempt the prisoner from increased punishment under the habitual criminal statute . . . ." Syl. pt. 1. Thus, it has been plainly established in West Virginia that an unconditional pardon by the Governor does not prevent consideration of the conviction when applying an habitual offender law. *Accord State v. Barlow*, 181 W.Va. 565, 570 n. 5, 383 S.E.2d 530, 535 n. 5 (1989) (per curiam) (explaining that a conviction that has been annulled by this Court may not be used for enhancement purposes while a conviction for which a full pardon has been granted may be so used, and commenting that "[t]he executive may forgive a conviction, but he cannot extinguish it. This rule is not necessarily disadvantageous to the pardoned criminal.

Though he may fear a recidivist prosecution upon further convictions, he is at least protected by the double jeopardy clause from another prosecution for the same offense. In this case [where the conviction was annulled by this Court], Barlow [the defendant] could have been tried again.").

The rationale for allowing the use of a pardoned conviction for sentence enhancement purposes is that it does not impose an additional punishment for the pardoned offense, rather the increased sentence is imposed on the second offense. In other words, using the fact of a pardoned conviction for the purpose of enhancing the punishment for a subsequent crime does not violate the rule that once an individual has been pardoned, he or she may not be subjected to additional punishment for the pardoned offense. This rational was explained by the Supreme Court of California thusly,

> It is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and generally speaking, it also removes any disqualification or disabilities which would ordinarily have followed from the conviction. To say, however, that the offender is " 'a new man,' and 'as innocent as if he had never committed the offense,' " is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it place no restraints upon him following his conviction. . . .

*People v. Biggs*, 9 Cal.2d 508, 511, 71 P.2d 214, 216 (1937).[5] The issue in *Biggs* was whether a California defendant, who had been convicted of two felonies in Texas and had received a full pardon by the Governor of Texas as to each, could be adjudicated an habitual criminal under California law based upon those Texas convictions. In concluding

---

5. *Biggs* was recently quoted favorably in a case involving, inter alia, the question of whether a guilty plea in another state that was followed by a dismissal upon the completion of probation constituted a prior conviction under California's three strikes law. *See People v. Laino*, No. S103324, 2004 WL 742890, at *6, 32 Cal.4th 878, 11 Cal.Rptr.3d 723, 732, 87 P.3d 27 (2004) (quoting a portion of the same text quoted above).

that the Texas convictions could be used as the basis for applying California's habitual criminal law, the *Biggs* Court reasoned:

> "The pardon of this defendant did not 'make a new man' of him. It did not 'blot out' the fact or the record of his conviction. . . . The pardon in this case merely restored the defendant to his civil rights. If it had been granted before his term of imprisonment had been served, it would also have relieved the defendant of that. But it did not obliterate the record of his conviction or blot out the fact that he had been convicted. . . . It relieved the defendant of the consequences which the law attached to his offense. But the defendant is to be punished now solely in consequence of his second offense. The fact of the former conviction is an element merely in determining the criminality of the second offense. . . . The Legislature of this state has said that one who commits a crime after having been convicted of another crime is a greater offender than as though he had not previously been convicted, and the punishment inflicted is solely for the second offense to which a greater degree of criminality is thus attached. That degree of criminality is not at all lessened by the fact of a pardon which assumes his guilt, remits the punishment, and affords him an opportunity to become a law-abiding citizen. It was solely within the province of the Legislature to attach such greater criminality to the second offense from the mere fact of a conviction for a first, and the executive by the exercise of the pardoning power could no more interfere with that exercise of legislative power than the Legislature could interfere with the power to pardon."

9 Cal.2d at 512–513, 71 P.2d at 217 (quoting *People v. Carlesi,* 154 A.D. 481, 486–87, 139 N.Y.S. 309, 312 (1913)). *See also People v. Carlesi,* 154 A.D. 481, 487, 139 N.Y.S. 309, 313 (1913) ("The Legislature of this state has said that one who commits a crime after having been convicted of another crime is a greater offender than as though he had not previously been convicted, and the punishment inflicted is solely for the second offense to which a greater degree of criminality is thus attached. That degree of criminality is not at all lessened by the fact of a pardon which assumes his guilt, remits the punishment, and affords him an opportunity to become a law-abiding citizen. It was solely within the province of the Legislature to attach such greater criminality to the second offense from the mere fact of a conviction for a first, and the executive by the exercise of the pardoning power could no more interfere with that exercise of legislative power than the Legislature could interfere with the power to pardon."), *aff'd* 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914); *Scott v. Raines,* 373 P.2d 267, 268 (Okla.Crim.App.1962) (concluding that "[t]he better rule is that on a charge of a second and subsequent offense the fact of a prior conviction, within the meaning of the statute, is not wiped out by a [full and complete] pardon; that the pardon by the executive power does not blot out the solemn act of the judicial branch of the government.").

Based upon the foregoing, it is clear that, even when a full or unconditional pardon has been granted, the *fact* of the conviction may nevertheless be considered under certain circumstances where no additional punishment for the pardoned crime is imposed upon the defendant. We believe this is exactly the effect of the procedure outlined in West Virginia Code Section 61–7–7(c). The purpose of Section 61–7–7(c) is not to inflict a punishment upon individuals who have been convicted of a felony offense. Rather, it is an acknowledgment that those who commit serious crimes "are [likely] more dangerous to society than one never found guilty of crime"[6] and may be more prone to an inability to exercise "the responsibility concomitant with the possession of a firearm." W. Va.Code § 61–7–7(c). It is within the providence of the Legislature, in exercising the police power, to balance the public's interest in safety with the pardoned individual's right to possess a firearm, so long as the regulation is reasonable and narrowly crafted. The Legislature has chosen to carry out this duty by creating a method through which those who have been convicted of a

---

6. *Biggs,* 9 Cal.2d at 511, 71 P.2d at 216.

felony may restore their right to possess a firearm simply by demonstrating that they are able to do so responsibly. Because the intent of W. Va.Code § 61–7–7(c) is not to punish, it is appropriate to require one whose conviction has been unconditionally pardoned to comply with its procedure. This is particularly true where, as here, the crime for which Mr. Perito has been pardoned was a violent crime involving a firearm, and the Governor's pardon was in no way based upon Mr. Perito's innocence.

Based upon the foregoing discussion, we now hold that West Virginia Code § 61–7–7 (2000) (Repl.Vol.2000), which prohibits certain persons from possessing firearms and provides a procedure for restoring the ability to possess firearms, applies to all individuals who have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, even when the individual has received an unconditional pardon from the Governor with respect to the conviction.

Applying this holding to the case at bar, we agree with the circuit court that the unconditional pardon granted to Mr. Perito did not automatically restore his ability to possess firearms. To achieve such restoration, Mr. Perito must comply with the procedure set out in W. Va.Code § 61–7–7.

## IV.

### CONCLUSION

For the reasons explained in the body of this opinion. We answer the question herein certified by the Circuit Court of Brooke County in the negative and conclude that a convicted felon who has been unconditionally pardoned by the Governor of the State of West Virginia is not exempted from the requirement of W. Va.Code § 61–7–7(c).

Certified question answered.